THE BOSTON SAFE DEPOSIT AND TRUST COMPANY v. A. C. STICH *et al.*

No. 11,465. (59 Pac. 1082.)

WILLS—*Rules of Construction Stated and Applied.* The will of an old, illiterate man was written by one of his neighbors, who was also illiterate and possessed of slight knowledge of the meaning and relation of words. The first part of the will in absolute terms devised all of the testator's realty to his sister Ellen. This devise was followed with a bequest to her of all the testator's personalty, beginning with the words, " I also will and bequeth," and closing with the words, " to have and hold during her natural life." Next after these words, and concluding the instrument, it read: " I also will and devise that my sister Ellen be not required to give bond but hold the same without let or hinderance same as I have done." There was no grammatical connection or apparent unity of relationship between the words of limitation and the words of devise. *Held,* that the intention of the testator, whether to devise a fee absolute in the realty or a life-estate only to his sister Ellen, cannot be gathered as a fact from the language of the will, and that effect can be given it only by the application of the following rules: (1) " That several independent devises, not grammatically connected, or united by the expression of a common purpose, must be construed separately, and without relation to each other; although it may be conjectured, from similar-

ity of relationship, or other such circumstances, that the testator had the same intention in regard to both. There must be an apparent design to connect them." (Jar. Wills, rule 22.) (2) "A devise in absolute terms of the fee of lands will not be limited or cut down to a less estate by the repugnant or inconsistent words of a succeeding clause of the will, unless it be the manifest intention gathered from the whole instrument that it should be done." (*McNutt v. McComb*, ante, p. 25, 58 Pac. 965.) (3) "Every devise of real property in any will shall be construed to convey all the estate of the testator therein which he could lawfully devise, unless it shall clearly appear by the will that the testator intended to convey a less estate." (Gen. Stat. 1897, ch. 110, § 54; Gen. Stat. 1899, § 7634.) Applying the above rules to the will, the fee of the lands devised by it, and not a life-estate merely, passed to the sister Ellen.

Error from Montgomery district court; A. H. SKID-MORE, judge.   Opinion filed February 10, 1900.   Reversed.

*Valentine, Godard & Valentine,* for plaintiff in error.

*Jos. Chandler,* and *J. B. Ziegler,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action to quiet title to real estate, brought by the plaintiff in error, the Boston Safe Deposit and Trust Company, against the defendants in error, A. C. Stich and others, defendants. The relief prayed for was granted as to an undivided half interest in the land but refused as to the other half interest, because the plaintiff did not show title to it. From this judgment error has been prosecuted to this court.

The determination of the question of title depends on the construction to be given to the language of a will. Peter Forest, the testator, was an old, illiterate man. He had neither wife nor children. His nearest relatives were a brother, Samuel, who lived in

Kentucky, and a sister, Ellen Servoy, who lived with and kept house for him. In his last sickness he made a will, of which the following is a literal copy :

"I Peter Forest of sound mind and memory doe make and bequeath the following devised property to my sister Ellen Serboy The N. W. Q of Sec. 13 in township 32 South of Rainge 16 Eest in the district of lands formerly subject to sale at humbolt now Independence Kansas containing one hundred and sixty acres also the North Eest quarter of Sec 14 in Township 32 South of Rainge 16 Eest in the district of lands formerly subject to sale at humbolt also the South East Quarter of Sec. 14 Town 32 South of Rainge 16 East in the district of lands formerly subject to sale at humbolt now independence Kansas containing one hundred and Sixty acres I also will and bequeth to my sister Ellen Serboy all the live stock now on the place mules horned cattle and hogs also all the machinery and farming implements waggons, bugie and all the harness also the growing crop now on the place and all the household furnature to have and hold during her natural life. I also will and devise that my sister Ellen be not required to give bond but hold the same without let or hinderance same as I have done.                    ·  PETER X<sup>his</sup> FORREST"
                                                          mark

The above will was drafted at the request of the testator by one of his neighbors. Ellen Servoy, assuming to be the owner in fee of all the lands described in the will, mortgaged the portion of them now in dispute, and subsequently died. The mortgage was foreclosed, and the plaintiff in error claims title to the land through the foreclosure sale and deed. The question is, Did Peter Forest, in the will above quoted, devise the fee of his lands to his sister Ellen, or a life-estate only? If the will passed the fee to Ellen Servoy, the judgment of the court below finding only a half interest to be in the plaintiff in error was

wrong. If it passed to her a life-estate only, it was right. Stated in exact terms, the question is, Did the qualifying clause in the will, "to have and hold during her natural life," limit the devise of the real estate, or limit the bequest of personalty only?

In the case of wills drafted by legal counselors acquainted with the technical meaning of the words employed, and who, presumably, explain the meaning of such words to the testator and advise him concerning their effect, less difficulty is experienced in arriving at the intention of the maker of the instrument. In such instances, whatever ambiguities and apparent inconsistencies occur are more easily explicable by the circumstances of the testator's life and situation and his relationship to others; but in the case of a will drafted by an illiterate layman, as was the one above copied, resort must oftener be had to technical and arbitrary rules of construction. Did the scrivener of the will in question intend, as expressive of the testator's desire, to limit the devise of the real estate to less than the fee? If so, why did he not write the words of limitation in more direct relation to the words of the devise? Did he intend the words of limitation to qualify the bequest of the personal property? If so, the bequest of a life-interest in things perishable is an unusual and singular gift. What was it the testator desired that his sister Ellen should hold "without let or hinderance," the same as he had done, and without the giving of bond? Other like insoluble questions might be asked without reaching in answer any satisfactory conclusion as to the testator's real intention. It were vain, therefore, to try to discover intention in the words of a testator or his scrivener, both of whom were seemingly so unskilled in the use of words as to be incapable of ex-

pressing intention in any understandable phrase. In such cases, as a matter of fact, knowledge of intention cannot be had, and, as before said, the best that can be done is to give effect to the will through arbitrary rules of interpretation. One of these rules is thus stated by Mr. Jarman:

"That several independent devises, not grammatically connected, or united by the expression of a common purpose, must be construed separately, and without relation to each other; although it may be conjectured, from similarity of relationship, or other such circumstances, that the testator had the same intention in regard to both. There must be an apparent design to connect them." (Jar. Wills, 5th ed., 708, rule 22.)

This rule, as stated in the notes to the author's work, "chiefly relates to a question of frequent occurrence; whether words of limitation, preceded by several devises, relate to more than one of those devises." This is our question. Do the words of limitation, preceded by the several gifts of devise and bequest, relate to more than one of those gifts? Under the rule, these devises, not being grammatically connected, or united by the expression of a common purpose, must be construed separately and without relation to each other, and some of them, at least, without relation to the words of limitation which follow. Grammatically considered, the words of limitation qualify only the last preceding gift.

Another rule is that a devise, in absolute terms, of the fee of lands, will not be limited or cut down to a less estate by the repugnant or inconsistent words of a succeeding clause of the will, unless it be the manifest intention gathered from the whole instrument that it should be done. This rule was applied, with

citations to authorities, in the recent case of *McNutt v. McComb*, ante, p. 25, 58 Pac. 965.

Another rule is furnished by the statutes of this state : "Every devise of real property in any will shall be construed to convey all the estate of the testator therein which he could lawfully devise, unless it shall clearly appear by the will that the testator intended to convey a less estate." (Gen. Stat. 1897, ch. 110, § 54; Gen. Stat. 1899, § 7634.)  This rule is quite like the common-law rule last stated, but is perhaps broader and more sweeping in its terms.  It cannot be said that it clearly appears from the will of Peter Forest that he intended to devise to Ellen Servoy a less estate in his lands than the fee ; therefore, under the statute, such will must be construed as devising all the estate which the testator had in his lands, which, of course, was an estate in fee.  Applying all these rules to the interpretation of the will of Peter Forest, or more accurately speaking, resorting to them for the purpose of giving his will effect, there cannot be, in our judgment, any doubt but that the sister, Ellen Servoy, took the fee to the whole of the lands in question.

The court below made findings of fact, a summary of which has been above stated.  The case is, therefore, reversed, with directions to enter judgment upon the findings for the plaintiff in error.