No. 40,589

In the Matter of the Estate of Fred Weidman, Deceased. (WALTER WEIDMAN, Executor; EMMA WEIDMAN DRESSELHAUS; ANNA WEIDMAN PANKAU; JOHN WEIDMAN; REGINA WEIDMAN FELDKAMP; LENA WEIDMAN MOLLENKAMP; HENRY WEIDMAN; CARRIE WEIDMAN WILHELM; RALPH DAVIS; WARD DAVIS; DOROTHY KOBBEMAN; and RUTH PANZER, Appellants, v. JULIA MANNEL WEIDMAN; ANNA MANNEL VENEKLASEN; ADAM MANNEL; CHARLES MANNEL; WILLIAM ALT; ARTHUR ALT; CARL ALT; LENORA ERICKSON; and WILLIAM HENRY DAVIS, Appellees.)

(314 P. 2d 327)

Opinion filed August 9, 1957.

*Jerry E. Driscoll,* of Russell, argued the cause and *Richard M. Driscoll,* of Russell, *John J. McCurdy,* and *Richard W. Wahl,* both of Lincoln, were with him on the briefs for the appellants.

*V. E. Danner,* of Ellsworth, argued the cause, and *D. B. Marshall, Jr.,* of Lincoln, *John V. O'Donnell,* and *R. E. Miller,* both of Ellsworth, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This appeal requires construction of a will and a review of rulings made by the trial court with respect to the same subject on an appeal from probate court.

On November 2, 1950, Fred Weidman and Julia Mannel Weidman, who were at that time and since June 19, 1924, had been husband and wife and had no children, joined in the execution of a will which, including its attestation clause, reads:

"IN THE NAME OF GOD: AMEN

"We, Fred Weidman and wife Julia Mannel Weidman, of Lincoln, County of Lincoln, State of Kansas, being of sound mind and memory and considering the uncertainty of this frail and transitory life, do therefore make, ordain, publish and declare this to be our Last Will and Testament.

"First: We order and direct that our executor herein after named, pay all our just debts and funeral expenses as soon after our deceasing as conveniently may be.

"Second: We give, devise and bequeath to our beloved brothers and sisters the balance of our property, real, personal and mixed of what nature where so ever the same may be at the time of our death.

"Third: We order and direct Walter Weidman, of Sylvan Grove, Kansas, as our legal executor. He is to serve without bond.

"Fourth: This division of property is to be equally divided, One half to the legal Mannel Heirs. One-half to the legal Weidman heirs.

"The legal Mannel heirs are Louise Mannel, Anna Mannel, Adam Mannel and Chas. Mannel.

"The legal Weidman heirs are Anna Weidman, John Weidman, Regina Weidman, Emma Weidman, Lena Weidman. The heirs of Clara Weidman deceased, Henry Weidman and Carrie Weidman.

"If any of the above named heirs are deceased, then their part may be legally received by their legal heirs.

"Fifth: In the event any of the above named heirs or their spouses disagree and shall cause any undue trouble, the same shall be automatically discharged as a legal heir or heirs and will forfeit their legal rights as heirs in this case.

"In Witness Whereof, We hereunto subscribe our names and affix our seal this second day of November, One thousand nine hundred and fifty.

/s/ FRED WEIDMAN

/s/ JULIA WEIDMAN

"This instrument was on the day of the date thereof, signed, published and declared by the said testators Fred Weidman and Julia Mannel Weidman to be their Last Will and Testament in our presence who at their request have subscribed our names as witnesses in their presence and in the presence of each other.

"Name | Address
--- | ---
/s/ MRS. ERNA FELDKAMP | Lincoln, Kansas
/s/ W. C. FELDKAMP | Lincoln, Kansas."

Fred Weidman died on March 7, 1955. At that time he was approximately seventy-eight years of age and his wife was approximately sixty-nine. Within a few days after Fred's death Walter Weidman filed a petition in probate court, to which he attached the foregoing will, asking that such instrument be admitted to probate as the decedent's last will and testament. By order of the probate court, dated April 8, 1955, this petition was granted, the will was admitted to probate and Walter was appointed executor to serve without bond. Thereafter the executor caused an inventory and appraisement of the estate to be made which, when returned by the appraisers, showed the assets of such estate consisted of real estate, valued at $22,500, and personal property, valued at $7,605.81.

On May 5, 1955, Julia Weidman filed an instrument in probate court whereby, as widow, she elected to take and abide by the terms of her deceased husband's last will and testament.

Eleven months later, on April 10, 1956, the executor filed his petition for final settlement wherein, so far as the record shows, it became apparent that he was claiming for the first time that the will, although jointly executed, was either Fred's separate will or that, in any event, his widow took nothing under its terms and provisions. It suffices to say such petition recited that Julia, as the wife of decedent, was the only person who would inherit from him under the laws of intestate succession and that she had consented in writing to such will and had filed her election to accept the provisions thereof; charged that the persons specifically named in the will as the brothers and sisters of Fred and Julia were the only legatees and devisees under the will, and under its terms, were entitled to have assigned to them all property, both real and personal, owned by such decedent on the date of his death; and

prayed for final settlement of his estate, that the court determine the heirs, devisees and legatees entitled thereto to be the persons named in the petition, that it assign the assets of the estate, including the remaining cash, personal property and real estate, to such persons in accord with the terms of the will, and that upon the filing of receipts showing disbursements and distribution to such persons the petitioner be finally discharged as executor.

May 4, 1956, Julia filed a written defense to the petition for final settlement wherein, among other things, she alleged (1) that under the terms of the will it was the intent of the testator that she was to have a life estate in all of his property, personal, real and mixed, and (2) that her name to such will was not consent thereto but intended to show the intent of the testator and herself that the instrument, as executed, was to be the mutual will of the two testators therein named, not the separate will of either of them, and not, therefore, to pass any property, except vested interest, to the brothers and sisters specifically named therein; and prayed that the probate court construe the will in its entirety, give effect to its meaning, and that she be determined to have a life estate in all property owned by Fred on the date of his death.

The probate court disposed of Julia's written defense and the petition for final settlement on the same day. For all purposes here important it may be stated its journal entry of final settlement discloses that it heard evidence on both matters and then, after construing the will, found (1) that Julia had consented to the will and filed her election to accept the provisions thereof; (2) that it was not the intention of the testator to create a life estate in his property in favor of Julia and that the terms of such will did not create a life estate in her favor; and (3) that under the terms of that instrument the persons therein identified as the legal Mannel and Weidman heirs (naming them) were the sole devisees and legatees of Fred and entitled to all property owned by him at the time of his death. Thereupon, based upon such findings, it assigned all real and personal property inventoried as a part of his estate to such persons and directed that all cash remaining in the hands of the executor be distributed to them according to their respective interests.

In due time Julia appealed from the decree of final settlement to the district court, specifying in her notice of appeal that she was appealing from all orders, judgments and decrees and decisions of the probate court wherein that court interpreted the will of the decedent testator and ordered final settlement of his estate.

When the case reached the district court the executor moved for judgment on the pleadings. Julia then moved to strike such motion from the files. Upon the sustaining of this last motion and a subsequent order striking the executor's motion for judgment from the files the parties in open court, by oral stipulation and agreement, submitted the cause to the district court upon the merits of all matters appealed from and upon the transcript and record of all previous proceedings had in the involved estate in probate court.

Subsequently, and after having taken the cause under advisement, the trial court rendered its judgment which, according to the journal entry and so far as here pertinent, reads:

"The District Court has given careful consideration to the facts disclosed by the transcript, to the oral arguments and written briefs of the respective parties and to the authorities cited by each therein, and from the evidence before it considers, orders, adjudges and decrees that the last will and testament involved in this matter and disclosed by said transcript is a joint and mutual will of Fred Weidman, now deceased, and of Julia Mannel Weidman, his wife, who is the present appellant. It is by the court further considered, ordered, adjudged and decreed that by the terms, provisions and plain intendments of said will, the survivor, after payment of debts and funeral expenses of the spouse dying first, takes a life estate in the estate of the deceased, with power of disposition, and at the death of such survivor, after the payment of his or her debts and funeral expenses, then that the balance, if any there be, shall be equally divided, one-half to the legal Mannel heirs and one-half to the legal Weidman heirs, as provided in paragraph 4 of the will in question. The court further considers, orders, adjudges and decrees that the appellant, Julia Mannel Weidman, surviving spouse of the decedent, Fred Weidman, under and by virtue of said will and in accordance with its terms, takes a life estate in the estate of Fred Weidman, deceased, with power of disposition, subject only to the payment out of said estate of the debts and funeral expenses of such decedent, and at her death any balance of said estate remaining after payment of her debts and funeral expenses is to be equally divided, one-half to the legal Mannel heirs and one-half to the legal Weidman heirs, as in paragraph numbered 4 in such will provided.

"Accordingly, the judgment and orders of the Probate Court of Lincoln County, Kansas, as appealed from herein, are vacated and ordered reversed; and the Clerk of the District Court of Lincoln County, Kansas, is ordered to certify to said Probate Court a transcript of the judgment and proceedings of this court had in such matter; and said Probate Court of Lincoln County, Kansas, is ordered forthwith to proceed to final settlement of said estate in accordance herewith. Costs of appeal are taxed to the Executor."

Following rendition of the foregoing judgment Walter Weidman, as executor, and other aggrieved parties filed a motion for a new trial and an amended motion for a new trial. Thereafter Julia filed a motion to strike such motions from the files. This motion was

sustained. Thereupon the executor and all of the legal Weidman heirs gave notice they were appealing from the district court's judgment wherein it interpreted and construed the last will and testament of Fred Weidman, deceased, and granted a life estate with power of disposition to Julia Mannel Weidman in all of the property of such decedent, both real and personal, and from all other adverse rulings.

Appellants' specifications of error will be disposed of in inverse order.

So considered the first error assigned is that the court erred in assessing the costs against the executor. In other words against the estate. The answer to this claim is to be found at page 30 of the opinion in *In re Estate of Ellis*, 168 Kan. 11, 30, 210 P. 2d 417, where, in rejecting a similar contention, it is said that under our code of civil procedure in actions for the recovery of money only or for the recovery of specific real or personal property, costs are allowed as a matter of course to the prevailing party, but in other cases the court may apportion the costs as in its discretion it may think right and equitable. (G. S. 1935, 60-3704, 3705, 3706.) It may be added that under the facts and circumstances of this case we would not be disposed to hold the trial court abused its discretion in assessing the costs against the estate, even if its construction of the will had resulted in a contrary judgment.

Next it is urged the trial court erred in sustaining Julia's motion to strike appellants' motion and their amended motion for a new trial. Since it is conceded that by oral stipulation and agreement of the parties this cause was submitted and disposed of by the trial court upon the transcript and record of all previous proceedings had in such estate in the probate court, this claim of error cannot be upheld. The long established rule of this jurisdiction is that where an action is submitted to the district court for judgment upon the transcript and record of a lower court a motion for a new trial is neither necessary, proper nor essential to a review of the judgment. See, e. g., *In re Estate of Pardun*, 176 Kan. 658, 272 P. 2d 1051; *Colyer v. Wood*, 178 Kan. 5, 283 P. 2d 398. See, also *Hamilton v. Binger*, 162 Kan. 415, 418, 176 P. 2d 553, and cases therein cited, where the foregoing rule is discussed and applied and it is stated that under such circumstances no trial errors, making a motion for a new trial necessary or proper, are contemplated and the only function of the trial court is to determine questions of law.

The next error assigned is that the trial court erroneously sustained Julia's motion to strike the executor's motion for judgment on the pleadings from the files. In connection with this claim it is to be noted the motion last mentioned was directed against the defense filed by Julia in the probate court, not against the sufficiency of any pleadings filed in district court pursuant to G. S. 1949, 59-2408, providing that on appeal the district court shall allow and may require pleadings to be filed or amended. Stated in another way, such motion was directed against the sufficiency of a pleading filed in probate court on the ground it constituted no defense to the petition for final settlement. Conceding, that the trial court might well have overruled this motion for judgment instead of striking it from the files, we think there are at least three sound reasons why its action with respect thereto cannot be disturbed. First, under the order made by the probate court on final settlement Julia, as widow, was a person aggrieved and, under existing provisions of the probate code (G. S. 1949, 59-2401, 2404), had a right to appeal from such order even though she had made no appearance and filed no defense in probate court. Second, her written defense, to which reference is made early in this opinion, is sufficient to require a construction of the will in question and constitute a defense to the petition for final settlement. Third, the probate code (G. S. 1949, 59-2201), dealing expressly with pleadings in probate court, provides in clear and unequivocal language that no defect in form shall impair substantial rights.

Although not specified as error appellants' next contention is that the district court was without jurisdiction to entertain the appeal from probate court. This presents a question which must be reviewed and decided even though it was not raised in the court below. (*In re Estate of Demoret,* 169 Kan. 171, 177, 218 P. 2d 225.)

The gist of all claims advanced on the point now under consideration is that the rights of Julia under her written defense are those of a person contesting a will or making a claim or demand against an estate hence, since she did not appeal from the order admitting the will to probate or file a claim against the estate within the time prescribed by G. S. 1949, 59-2239, the district court's judgment should be set aside and the case dismissed. The difficulty from appellants' standpoint is that the record does not sustain their position respecting the nature of the involved controversy. Under the undisputed facts Julia is relying on the will, not

contesting it, and her claims with respect thereto are in no sense to be regarded as a claim or demand against the estate, within the meaning of that term as used in 59-2239, *supra*. Indeed the real issues, in fact the only controverted issues, involved in probate court in connection with the final settlement of the estate were the construction to be given the will and the determination of persons entitled to share in the estate under its terms and provisions. Under our decisions appellants' claim the district court had no jurisdiction to hear and dispose of the appeal from the decision made by the probate court with respect to such issues on final settlement of the estate lacks merit and must be denied. See *Bindley v. Mitchell*, 170 Kan. 653, 228 P. 2d 689, where it is held:

"At the final settlement of the estate of a testate decedent the probate court has not only the authority but the duty of interpreting or construing the will and determining the respective beneficiaries of the estate named in the will and assigning to each the share of the property bequeathed or devised by the will.

"The method provided by statute for correcting any error the court might make interpreting or construing the will and determining the respective shares of the beneficiaries named therein is by an appeal from the order of final distribution." (Syl. ¶¶ 1, 2.)

The final and most important claim of error made by appellants is that the trial court erred in its interpretation and construction of the will in question, wherein it granted a life estate with power of disposition to Julia in all of the property of decedent, both real and personal.

Appellants devote much of their brief to a contention that this was Fred's separate will, notwithstanding Julia joined in its execution. In connection with this contention our attention is directed to *Allen v. Allen*, 28 Kan. (2nd Ed.) 18, and *Moore v. Samuelson*, 107 Kan. 744, 193 Pac. 369, holding in substance that where a husband and wife joined in the execution of what is in form a joint will, but which only disposes of property belonging to the husband, the will is to be considered as the will of the husband, and the joinder of the wife in the making of the devises is to be disregarded as mere surplusage. In seeking to bring this case within the rule of such decisions appellants assume Fred owned all the property and Julia none at the time of the making of the will. The trouble from their standpoint comes from the fact that appellees produce excerpts from a brief, which they allege and appellants do not deny was submitted to the district court, wherein one of appellants' counsel made

admissions which, in our opinion, when considered in connection with the language of the will and its attestation clause, completely refute all arguments now advanced by appellants to the effect (1) that on the date of the execution of that instrument Fred owned all of the property and Julia owned no separate estate on which the will could operate; (2) that such instrument was Fred's separate will; and (3) that the rule of the decisions on which appellants rely has any application under the existing facts and circumstances. (*Zabel v. Stewart,* 153 Kan. 272, 277, 109 P. 2d 177.)

Indeed when viewed in the light of the same facts and circumstances we are convinced the will was contractual in nature and was the joint and mutual will of Fred and Julia. To concede, as appellants point out, the record discloses no express evidence to the effect the parties ever entered into a contract to execute such instrument does not require a contrary conclusion. In *Lewis v. Lewis,* 104 Kan. 269, 178 Pac. 421, we said:

". . . The defendant says that there was no evidence to show that T. W. Lewis and Betsy A. Lewis ever entered into any contract to make the will, and that there was no finding of the court that such a contract was made. How could such a will be voluntarily executed if there was no agreement or understanding that it would be made? The will itself, its terms, and its execution, are evidence that such a contract was made. (*Nelson v. Schoonover,* 89 Kan. 388, 392, 131 Pac. 147; *Baker v. Syfritt,* 147 Iowa 49; *Bower v. Daniel,* 198 Mo. 289, 320; *Frazier v. Patterson,* 243 Ill. 80; *Campbell v. Dunkelberger,* 172 Iowa 385, 390; *Larrabee v. Porter,* 166 S. W. 395 [Tex. Civ. App. 1914].)" (p. 273.)

Nor does it follow, as appellants suggest, that such will could not be admitted to probate as Fred's last will and testament. See *In re Estate of Adkins,* 161 Kan. 239, 167 P. 2d 618, and *Zabel v. Stewart,* Syl. ¶ 2, *supra.* Neither is it important that for some reason, not disclosed by the record, Julia was induced or permitted to elect to take and abide by the terms of the will after it had been so admitted. That action was neither necessary nor required in order for her to make claim as a beneficiary under its terms and, under the circumstances, the most that can be said for it is that it furnishes some indicia of her belief and understanding she was entitled to share in the benefits and/or burdens contemplated by the terms of the will as jointly executed.

Having determined how the will should be classified the next, and we may add the final, question presented for appellate review calls for a construction of the will itself to determine what disposi-

tion the parties made of their property under its terms and provisions. This, since we have no difficulty in concluding its terms are ambiguous, requires that we construe the instant will in the light of rules long since established by this court in cases where the terms and provisions of other wills have been regarded as indefinite and uncertain. Therefore, without attempting to exhaust the field, we shall make brief reference to just a few of our decisions where the rules applicable under facts and circumstances such as are here involved are stated and discussed.

In *Hawkins v. Hansen*, 92 Kan. 73, 139 Pac. 1022, we held:

"The rules of construction applied to wills by this court in numerous cases recognize that each will must be construed by its own terms, and that where there is any ambiguity in the language this court must, as far as possible, put itself in the position of the testator, taking into consideration all the circumstances under which the will was executed, the condition of the testator's family and his estate, and from all the facts and circumstances find what his intention was. (*Safe Deposit Co. v. Stich*, 61 Kan. 474, 59 Pac. 1082; *Hurst v. Weaver*, 75 Kan. 758, 762, 90 Pac. 297.)" (Syl. ¶ 1.)

To the same effect is *In re Estate of Hauck*, 170 Kan. 116, 223 P. 2d 707, holding that:

"Where construction of a will is necessary the court must put itself in the situation of the testator when he made his will and from a consideration of the language used in the entire will determine as best it can the intention he endeavored to convey, the cardinal rule being that the intention of the testator as gathered from the whole will must control unless contrary to settled rules of law." (Syl. ¶ 3.)

See, also, *Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276, a recent declaration respecting the paramount rule for construction of wills, where, repeating and reapproving the principle announced in the early case of *Brown v. Brown*, 101 Kan. 335, 166 Pac. 499, we held:

"A rule for the construction of wills, to which all other rules are subordinate, is that the intention of the testator, as garnered from all parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator." (Syl. ¶ 1.)

And in the opinion stated:

". . . In construing a will, the court must put itself as nearly as possible in the situation of the testator when he made the will and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. (*Lawrence National Bank v. Shirk*, 173 Kan. 76, 244 P. 2d 179; 5 Hatcher's Kansas Digest [Rev. Ed.], Wills, § 101; West's Kansas Digest, Wills, §§ 439, 440 and 441.)" (p. 356.)

Boiled down appellees' position on the point now to be considered is that under and by virtue of the terms of the will, particularly paragraph two thereof, Julia takes a life estate, with power of disposition, in all property owned by Fred on the date of his death. On the other hand appellants take the position that if, as we have held, the will was the joint and mutual will of Fred and Julia then, and in that event, Julia takes a life estate only in such property.

Mindful that each will must be construed by its own terms and when ambiguous in accord with the intention of the particular individual and/or individuals executing the instrument, we see no necessity for prolonging this opinion by an extended statement of reasons responsible for the conclusions we have reached regarding the interpretation to be given the will now under consideration. It suffices to say that when we place ourselves in the situation Fred and Julia were in at the time they made their will and then read that instrument in the light of the limited facts of record, for which both appellants and appellees must assume responsibility, presented to this court on appellate review the best we can do under the particular facts and circumstances of this case is to conclude and hold that what they intended to accomplish by their will was to give each a life estate in the property of the other and at the same time make certain that the corpus of all property owned by both at the time of the death of whichever died first should go one-half to the Weidman heirs (Fred's brothers and sisters) and one-half to the Mannel heirs (Julia's brothers and sisters) subject to such life estate.

With the will construed as above indicated the trial court erred in holding that Julia Weidman takes a life estate, with power of disposition, in the estate of Fred Weidman, deceased. Therefore its action in that respect is reversed with directions to render judgment holding that under the terms of the will she takes a life estate in the estate of her deceased husband without power of disposition.

It is so ordered.