No. 37,038

BIRDIE SHARPE, *Appellee*, v. ORVEY SHARPE, *Appellant*.

(190 P. 2d 344)

Opinion filed March 6, 1948.

*Fred Rueb,* of St. Francis, was on the brief for the appellant.

*D. H. Postlethwaite,* of St. Francis, was on the brief for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal in this case is from a ruling of the district court in a declaratory judgment action. Two questions are presented. The first is whether an actual controversy existed which was justiciable under the declaratory judgment act. The second is whether the court's ruling construing the will as creating a life estate with power of disposition was correct.

The paragraph in the will which the plaintiff sought to have construed reads:

"I give, devise and bequeath to my wife, Birdie [the plaintiff], all of my property, real, personal, or mixed, wherever the same may be situated and after her death any remaining property of my estate is to be divided equal between my children who are as follows: [naming them] . . ."

The defendant is one of the named children. The facts germane to decision follow.

The plaintiff and her husband, Frank Sharpe, prior to his death, owned and lived on the involved land. In 1942 Frank Sharpe died

leaving a will containing the paragraph hereinbefore quoted. His will was admitted to probate and his widow, the plaintiff, elected to take under it. The estate was closed but the decree of final settlement did not construe the will. The order of the probate court in respect thereto merely recited that the described real estate and certain personal property "be and the same is hereby assigned to and vested in the said Birdie Sharpe [the plaintiff], surviving widow of said decedent, as in said Will provided." No one interested in the estate appealed from the decree of final settlement and consequently the controversial clause in the will remained unconstrued until the district court construed it in the present action.

1. Counsel for the respective parties in this case do not protest against the failure of the probate court to construe the will but the appeal presents an opportunity for this court to condemn a practice in which some probate courts frequently indulge. The section in our present probate code relating to final decrees reads:

"The decree shall name the heirs, devisees, and legatees, describe the property, and state the proportion or part thereof to which each is entitled." (G. S. 1947 Supp., 59-2249.)

A full compliance with the intent of such statute is not made by a probate court when the final decree simply recites the names of the devisees and legatees and that the property shall descend to them "as in said will provided." In order for a probate court to follow properly the mandate of such statute, the final decree should set forth with particularity the extent and nature of the title which each legatee or devisee acquires. If such practice had been followed in this case, the present long-delayed litigation would not have been necessary and examiners of title could have determined the nature and extent of title which each of the devisees acquired by the will by reliance upon the final decree of the probate court in the absence of an appeal therefrom, provided the probate court had jurisdiction of the necessary parties. Of course, this court is cognizant of the fact that counsel for respective parties frequently fail to present for the consideration of probate courts questions concerning the construction which should be given to doubtful provisions in wills and that, therefore, such courts do not have the benefit of briefs and arguments pertaining to provisions which may or may not prohibit alienation of title. But this court is convinced that it was the intent of the framers of the present probate code to have such questions considered and passed upon by probate

judges in connection with the closing of an estate in order to facilitate and expedite decision upon all questions which might affect the subsequent conveyance of real property. It follows that in instances wherein provisions of wills are not clear as to the nature and extent of the title which passes thereby, counsel for the interested parties should be admonished by the probate courts to submit such doubtful questions for original consideration by such courts. The facts in the present case demonstrate the advisability of such a practice.

After the closing of the probate of the estate of Frank Sharpe, the plaintiff continued to live upon the property and used the farm income to pay off a balance upon an indebtedness in the amount of $4,000. She stayed on the land until her physical condition became poor and she desired to move into Goodland, Kan., and purchase a home. In furtherance of such purpose, all of her children, except the defendant, in December, 1945, conveyed their interests in the involved real estate to the plaintiff by the execution of a quitclaim deed. Thereafter the plaintiff purchased a home and in connection with the financing thereof she was able to mortgage the involved land for $4,000. At such time she asked the defendant if he would assist her in buying the new home by joining in the execution of the mortgage on the farm property. The defendant refused to do so and a dispute arose between the two parties over the proper interpretation which should be given to the will. After moving to Goodland, the plaintiff became ill and it was necessary for her to incur bills in the amount of approximately $1,100 for hospitalization, nursing and medical care. Plaintiff did not have the money available at the time the bills were incurred and the dispute between her and her son relative to her rights to dispose of the involved property continued until the present action was brought in January of 1947, which was almost five years after the death of the testator whose will is the subject of the controversy. The defendant justifies his refusal to join in mortgaging the farm by asserting that he thought it would be better for his mother to live with her various children until prices became lower and that he thought it was unwise for his mother to place a new mortgage on the farm which was affording her a living. We are not concerned, on appeal, with the merits of the defendant's contention but mention thereof is made in order that the opinion may not, by implication, indicate that the defendant's refusal to coöperate with

his mother was unquestionably arbitrary and selfish. The defendant's reasons for not wanting his mother to mortgage the farm may have been adequate but that question is not before us. The first question we must decide is whether an actual controversy exists between the parties which is justiciable under our declaratory judgment act.

2. Counsel for the defendant asserts there is no evidence establishing that any controversy existed between the plaintiff and the defendant at the time the action was brought and that, therefore, the defendant's demurrer to the plaintiff's evidence should have been sustained. In support of such contention the defendant develops that the only controversy which the evidence discloses occurred between the parties arose in connection with the defendant's refusal to join in a mortgage of $4,000 upon the land in December, 1945; that, nevertheless, the plaintiff was able to mortgage the property for that amount of money and that consequently the incident had been closed between them for over a year before the present action was brought. The defendant also contends that the evidence did not develop any disagreement between the defendant and the plaintiff in connection with the plaintiff having incurred bills in the amount of $1,100, and that no evidence indicates that there was any controversy between the plaintiff and the defendant at the time of the commencement of the action nor at any time shortly before the action was commenced. As a consequence, it is argued that no actual controversy existed and that the following cases are controlling: *West v. City of Wichita,* 118 Kan. 265, 234 Pac. 978; *Williams v. Flood,* 124 Kan. 728, 262 Pac. 563; *Purity Oats Co. v. State,* 125 Kan. 558, 264 Pac. 740; and *Kittredge v. Boyd,* 137 Kan. 241, 20 P. 2d 811. We think that the cited cases do not control the question presented in this case as to the existence of an actual controversy. We need not recite the facts in the cited cases but it may be observed that none of them presents the provisions of a will for interpretation. One of the basic essentials of jurisdiction under the declaratory judgment act is that the judgment sought to be obtained will result in "consequential relief" because it has been held that in the absence of such a condition, the relief granted is not judicial, and therefore cannot be conferred upon courts by the legislature. A mere advisory opinion upon an abstract question is obviously not a judgment at all when no parties are to be bound and the rights of no one are directly affected. As

was said in *State, ex rel., v. Grove,* 109 Kan. 619, 622, 201 Pac. 82, 19 A. L. R. 1116:

"Where a judgment is sought of such character as to be of no benefit unless accompanied by an order the carrying out of which is impossible the futility of the proceeding is a sufficient basis for a court's refusal to entertain it, whether or not jurisdiction to do so exists. But some judgments are wholly or in part self-operative. They perform a valuable function in and of themselves. It is often said that a cause of action arises only upon the breach of a duty—the invasion of a right. This, however, is merely the announcement of a general rule of practice subject to possible exceptions and to legislative change. Actions to *quiet title* and to *construe wills* are recognized methods of invoking judicial action which do not originate in the actual commission of a wrong nor terminate in a judgment inflicting a penalty, granting compensation or injunction, or otherwise giving 'consequential relief,' the declaration of rights being all that is necessary to fit the requirements of the case. . . . The judgment does not change the condition of the title but simply declares where it is vested. It gives the only relief that is necessary to settle the controversy—the determination of the ownership of the property." (Emphasis supplied.)

Our statute pertaining to declaratory judgments (G. S. 1935, 60-3127) specifically vests in the district courts the right to determine controversies involving interpretation of deeds, wills and other instruments of writing. Controversies arising over the interpretation of wills always have been considered as justiciable in the district courts of Kansas. And since the enaction of the declaratory judgment act, actions seeking the construction of wills have been considered justiciable thereunder. (See the list of cases cited in *Kistler v. Fitzpatrick Mortgage Co.,* 146 Kan. 467, beginning at the bottom of page 471, 71 P. 2d 882; see, also, *Hagerman v. Hagerman,* 160 Kan. 742, 165 P. 2d 431, and *Skelly Oil Co. v. Cities Service Oil Co.,* 160 Kan. 226, 160 P. 2d 246.) The plaintiff's petition in the present case specifically alleged that an actual controversy existed between the plaintiff and the defendant in that the defendant contended that plaintiff did not have the right to dispose of or encumber the real estate or any part thereof for any purpose whatsoever. In addition, the petition alleged that the plaintiff was entitled to a judgment interpreting the will in such manner that the plaintiff would be declared to have taken a life interest in the property of the testator with full power of control and disposition of the property during her lifetime. The answer of the defendant is somewhat evasive on the issue but sets forth a denial of each and every allegation contained in the plaintiff's petition except as to certain facts which are not controversial in the case. Unquestionably, the de-

fendant has not admitted and does not now admit that the plaintiff is entitled to the interpretation of the will which she sought to obtain in bringing the action. Consequently, an actual controversy has existed and does exist as between the two parties over the proper interpretation of the will. And it should be observed that the relief sought is all that is necessary to settle the controversy. In such circumstances, it is not necessary for one or the other of the parties first to do something which is illegal or improper in order to present an actual controversy. (See *State, ex rel., v. Grove,* supra.) Since the probate proceedings were not pending, no question is involved as to the probate court having exclusive original jurisdiction. (See *Asendorf v. Asendorf,* 162 Kan. 310, 176 P. 2d 535.) The order of the district court overruling the defendant's demurrer to the evidence, which was predicated upon the contention that no actual controversy existed between the parties, was correct.

3. Did the will create a life estate with power of disposition? The will clearly devised to the plaintiff all of the testator's property with the proviso that "after her death *any remaining property of my estate* is to be divided." (Emphasis supplied.) The defendant argues that the clause did not give the plaintiff a power of disposition because in devising the property to his wife the testator added a limitation upon his wife's estate by devising it to his children after his wife's death and that the limited devise is contained in the one paragraph and expressed as a whole. Our attention is directed to the fact that the will did not first carve out an absolute fee in the wife and then later in another paragraph seek to put a limitation upon it. The defendant relies in part upon *Williams v. McKinney,* 34 Kan. 514, 9 Pac. 265. The question really involved in the cited case was whether all of the heirs of the mother would inherit the real estate as would have followed from her having an absolute fee simple title to the property or whether certain named minor heirs would inherit the property at the termination of a life estate. It was held in such case that the minor heirs only inherited under the will of their father following the termination of the life estate, but the question of whether the widow had the right to alienate or dispose of the property during her lifetime was not determined. The defendant also cites *Chase v. Howie,* 64 Kan. 320, 67 Pac. 822. As pointed out in the cited opinion (p. 325), the will in that case did not contain any words signifying an intention on the part of the testator that his widow should be vested with the control or power

of disposition of any part of his estate. Such will did not contain any such words as "remaining property" or any words synonymous therewith. Another case cited by the defendant is *McNutt v. Mc-Comb,* 61 Kan. 25, 58 Pac. 965. In such case it was held that a devise and bequest to a wife, which was made unconditional in the first paragraph of the will, was not limited to a life estate by a second paragraph in the will which contained a direction that whatever might remain of the estate at the death of the wife should be divided among three children and a grandson of the testator. The case is not authority in support of the contention made by the defendant in the present case. Moreover, the decision in *McNutt v. McComb,* supra, has been definitely disapproved. (See *Dyal v. Brunt,* 155 Kan. 141, 123 P. 2d 307.)

The will in the present case may not have created an uncontrolled power of disposition of the real estate of the testator in such manner as to have vested in the plaintiff an estate in fee simple which she could have disposed of by will. But we have no hesitancy in concluding that the will created a life estate with a power of disposition, as was held by the trial court. To hold otherwise would require us to overlook the significance which must be given to the use of the phrase "remaining property of my estate" in the will. The use of such phrase probably limited the devise to such an extent that it could not properly be regarded as an absolute devise in fee. The use of the word "remaining" by the testator clearly indicates, in our opinion, that the testator intended that the devisee of the real estate should have the power to dispose of such portion of the property as might be required during her lifetime. Otherwise no practical significance would attach to the use of the words "remaining property." In the case of *Otis v. Otis,* 104 Kan. 88, 177 Pac. 520, the will contained a clause reading: "All properties left at my wife's death to be divided equally between my six children." It was held therein that the will created a life estate with power of disposition. In the case of *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, the will provided that at the death of the wife the real and personal property should be divided equally among the children of the testator or their heirs. A preceding paragraph of the will provided that the wife of the testator should be the owner and have complete control over the testator's property. From the opinion the following is quoted:

"In short, Louis Waterman intended to bestow his property in such a manner as to make adequate provision for his wife, presuming that it was unlikely that she would make great inroads upon the estate, and intending that his children should have what she did not expend of it during her lifetime. Such a testamentary arrangement is what is commonly known as a life estate with power of disposition." (p. 97.)

It is true that in the Otis case, *supra*, and again in the Markham case, *supra*, that the wife, who was named as a devisee, was referred to as the owner of the real estate, while in the present case the words "to own" or "the owner" do not appear in the will. The defendant seeks to distinguish the cases on such ground. We think the suggested distinction is not sound. The will in the present case reads: "I give, devise and bequeath to my wife, Birdie, all of my property, real, personal, or mixed, . . ." Such language in itself carries with it all of the implications incident to ownership except such limitation thereon as was expressed in the subsequent language of the will.

In the case of *Clark et al., v. Middlesworth et al.*, 82 Ind. 240 (see annotation in 2 A. L. R. 1313), the will contained a clause reading: ". . . and, at her death, *should anything remain*, the same to be divided among my heirs at law." (Emphasis supplied.) It was held therein that the widow took a life estate in the property with a power to dispose of it in fee prior to her death. Otherwise, the court held, the words, "and, at her death, should anything remain," would be senseless and without meaning. In the case of *Young v. Hillier*, 103 Me. 17, 67 A. 571, 125 A. S. R. 283, the will contained a clause reading: "At the death of my said wife Elizabeth, whatever *may remain of said estates,* I give, devise and bequeath to my daughter, . . ." (Emphasis supplied.) The opinion reads:

"By saying that only so much of the real estate as might *'remain'* at the death of the wife, should pass to the daughter, he [the testator] expressed his purpose that the use given to the wife should extend to a sale of it, if she wished or needed. Otherwise there is no practical significance in the use of the word 'remain' in this connection." (p. 21.)

The trial court held that the will was unambiguous and created a life estate in the plaintiff coupled with a power of disposition which would authorize her to sell, mortgage or convey the real estate involved in the action and that the defendant was the owner of an undivided one-fourth remainderman's interest therein, subject to the life estate of the plaintiff with the plaintiff's right of disposition as

before stated. We agree with the trial court's conclusion. The assignments of error asserted by the defendant set forth also that the trial court erred in denying the defendant's motion to strike and to set aside its findings of fact and conclusions of law and in overruling the defendant's motion for a new trial. Such asserted errors, however, are predicated only upon the result reached by the trial court is considering the two questions herein discussed and consequently require no further comment in this case.

The judgment of the district court is affirmed.