No. 37,681

WALTER BERRY, *Appellee*, v. In the Matter of the Estate of Lon Berry, Deceased, ETHEL BERRY, Administratrix, c. t. a., *Appellant*.

(212 P. 2d 283)

Opinion filed December 10, 1949.

*David Prager*, of Topeka, argued the cause, and *Edward Rooney* and *Jacob A. Dickinson*, both of Topeka, were with him on the briefs for appellant.

*Harry K. Allen*, of Topeka, argued the cause, and *L. M. Ascough* and *Marion Beatty*, both of Topeka, and *Harry C. Castor*, of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

PRICE, J.: This appeal involves the interpretation of the provisions of a joint and mutual last will and testament.

Lon and Ethel Berry were married in 1931. Each had been married before and each had three children by such former marriages.

On March 1, 1945, one Brandenburg and his wife conveyed eighty acres of real estate situated in Shawnee county to Lon and Ethel as joint tenants with right of survivorship, and not as tenants in common. On September 5, 1945, Lon and Ethel executed their joint and mutual last will and testament, the pertinent portions of which are as follows:

". . . . . . . . . . . . .

"WHEREAS, we are both mindful of the uncertainty of life and it being our desire to jointly dispose of our property in accordance with an agreement

reached between us, we, Lon Berry and Ethel Berry, husband and wife, being of sound mind and disposing memory, do hereby make, publish and declare this to be our joint and mutual and irrevocable will and we hereby declare it to be contractual.

"We each agree and direct that upon the death of the first one of us the survivor shall take a life estate in all the property of the deceased, both real and personal and upon the death of the survivor, all the property, both real and personal, shall descend and be divided among the respective children of each. That is to say: one-half of said property shall be divided share and share alike among the three children of Lon Berry and one-half of said property, share and share alike, among the three children of Ethel Berry. The respective parties to this will have been married before and each have three children by former marriages. . . ."

Lon died on November 9, 1945, and the will was duly admitted to probate by the probate court of Shawnee county. Ethel, as administratrix with the will annexed, administered the estate and upon final settlement the court entered its order and finding to the effect that upon the death of Lon the full title to the eighty acres in question "was vested immediately in the surviving joint tenant, his wife, Ethel Berry, and that such real estate so owned in joint tenancy was subsequent to the death of Lon Berry, the sole property of the surviving joint tenant, Ethel Berry, wife of the decedent."

Walter Berry, appellee here, a son of Lon by his former marriage, appealed to the district court, alleging that by the provisions of the joint and mutual will Ethel took only a life estate in the real estate in question. In the district court the matter was heard on a stipulation of facts, substantially as above set out, and Ethel introduced oral evidence with reference to the alleged execution and delivery by Lon to her of a quitclaim deed on or about September 25, 1945, by which it is alleged Lon quitclaimed to her all of his right, title and interest to the real estate in question. This evidence showed this alleged quitclaim deed to be lost and neither had it been recorded.

On September 17, 1948, the district court entered its order and filed a memorandum in the nature of findings of fact and for its conclusion of law ruled that upon the death of Lon the joint and mutual will became of full force and effect and that under it Ethel took a life estate in the eighty acres in question, with the remainder in fee to the two sets of children mentioned in the will.

Ethel filed a motion for a new trial, one of the grounds being "that the decision of the court is in whole and in part contrary to the evi-

dence." This motion was argued by counsel, taken under advisement, and was on December 16, 1948, denied. Notice of appeal from the order and decision of September 17, 1948, and from the order overruling the motion for a new trial was served on February 10, 1949.

Appellee has filed his motion to dismiss the appeal for the reason that it was not taken until more than two months after September 17, 1948, that being the date when the trial court rendered its judgment. We will not labor the question, but in our opinion the appeal was taken in time.

At the trial in the lower court oral evidence with reference to the execution, delivery and provisions of the alleged quitclaim deed was introduced, and while it is true that the lower court's written memorandum does not make it clear as to what the trial judge actually thought about the execution of the quitclaim deed, yet we are of the opinion that the motion for a new trial clearly called for a reëxamination by the trial court of the facts in controversy. It should be noted that the evidence concerning the provisions of this deed—that is, whether it purported to convey a fee to Ethel or merely a life estate was conflicting and during the trial the court said:

"I think from all this oral evidence here I will make one finding right now and that is if there was such a deed that had the description to this eighty acres on it, . . . that all in the world it did was to create a life estate in Mrs. Berry, and that's all."

The appeal was taken within two months from the date the motion for new trial was overruled and appellee's motion to dismiss is therefore denied.

In her brief appellant advances several different theories and grounds for reversal of the trial court's decision, and contends that the correct solution to the problem presented is that the joint and mutual will did not work a severance of the joint tenancy nor a destruction of the right of survivorship and that Lon quitclaimed his interest in the property to Ethel before his death. In order to adopt this theory we would have to upset the trial court's findings with reference to the alleged quitclaim deed, and, as heretofore stated, while it is not exactly clear just what the trial judge actually thought about the execution and delivery of this deed yet we are confronted with the fact that nowhere in this record is there an affirmative finding that the deed was ever executed and delivered as claimed. The court took the position that the provisions of the

joint and mutual will are controlling and thus Ethel took a life estate in the real estate in question. The lower court saw and heard the witnesses and in announcing its decision stated:

". . . The deed was not introduced in evidence. There was no evidence of its having been recorded. There was evidence that the deed could not now be found. The evidence is very meager as to why the deed was made except that there was testimony that the decedent said he wanted to straighten up his business. . . . The evidence concerning the lost quitclaim deed is not clear and convincing enough to me to make me believe that such quitclaim deed made after the execution of the joint and mutual will had any effect upon the will at all. The evidence does not convince me that such quitclaim deed, if there was one, amounted to a revocation of the joint and mutual will, nor that it had the effect of setting aside the testamentary contract contained in the will. . . ."

We have examined in detail the evidence with reference to the deed and in our opinion the trial court's failure to make an affirmative finding as to its execution and delivery is fully supported by the evidence and will not be disturbed on appeal. The same is true with respect to the court's findings as to its provisions, if indeed there was such a deed.

Such being the case, we therefore have the one question before us—upon the death of Lon did Ethel take a life estate in the eighty acres or did she take full title by virtue of the joint tenancy deed of March 1, 1945?

Under this deed the survivor would take full title and if appellant's contentions are to prevail it would follow that the three children of Lon would be left without any interest in the property. The authorities are virtually unanimous in agreeing that a joint tenant may at his pleasure dispose of his share and convey it to a stranger and that such conveyance will result in a severance or termination of the joint tenancy. *McDonald v. Morley*, 15 Cal. (2d) 409, 101 P. 2d 690, 129 A. L. R. 810, and Annotation commencing at 129 A. L. R. 813. See, also, 14 Am. Jur., Cotenancy, § 14, p. 86, where it is said:

"A joint tenancy may be severed, either voluntarily, as by a partition of the property, or a conveyance of the interest of any joint tenant, or involuntarily, as by an execution sale of any interest that is subject thereto."

The question then arises—did the provisions of the joint and mutual will of Lon and Ethel bring about a severance of the joint tenancy created by the deed?

The respective briefs of the parties contain interesting discussions of estates by entirety, joint tenancies and tenancies in common, but

in our view of the case the correct solution of the question presented is to be found in the very terms and language of the will itself. There is authority to the effect that in the very nature of things a joint and mutual will is contractual (*Lewis v. Lewis,* 104 Kan. 269, 178 Pac. 421) but in the case at bar there is no occasion to speculate as to the contractual nature of the will for the reason that the parties executing it specifically declared it to be so. They owned certain property which had been accumulated during the fourteen years of their married life and obviously decided that the fair and equitable manner of its disposal would be for the survivor to take a life estate in all of it with remainder over to the two groups of children mentioned in the will—that is one-half, share and share alike, among Lon's children and the other one-half, share and share alike, among the children of Ethel. And neither is there any occasion here, as is necessary in so many cases involving the interpretation of wills, to concern ourselves with the intention of the testators. We think there can be only one answer—that is, the survivor is to take a life estate in all property with remainder over, as above set forth.

Appellant relies heavily on the case of *National Life Ins. Co. v. Watson,* 141 Kan. 903, 44 P. 2d 269, as supporting her contentions. In that case the husband and wife executed a joint, mutual and reciprocal will in which they devised and bequeathed to each other, as the survivor may be, a life estate in all the real property of which either may die seized or possessed, with remainder over to their children, share and share alike. Three years later the wife died. The husband remarried and subsequently mortgaged 100 acres of land, the title to which stood in his name at the time the joint will was executed and at her death. Default occurred and suit was brought to foreclose the mortgage. The children intervened, claiming that the father had only a life estate in the 100 acres in question. Both the trial court and this court held that the joint and mutual will imposed no restriction upon the husband's right of alienation of any property owned by him and that the mortgage was a first lien thereon, and in the decision it was said:

"By the joint will Martin Childers impliedly agreed that whatever property he may die seized of shall pass under that will to the seven children named in its fifth paragraph quoted above. He did not bind himself not to alienate or dispose of any of his property during his life as his own wants, needs or convenience might require. When Martin Childers joined in the execution of the mutual and reciprocal will of himself and his first wife, he did not thereby intend to disable himself to exercise dominion over his own

property. . . . The joint will of Martin and Beatrice is still a perfectly good will. When in the fullness of time Martin is gathered to his fathers, the real estate of which he dies seized will pass to the seven children named in the fifth clause of the will, as both their parents intended."

We think that the Watson case, *supra,* is distinguishable from the case at bar on at least two grounds, one being that in that case the controversy involved title to real estate standing in the name of the husband, who survived, as of the date of the joint and mutual will and as of his wife's death. We have no such situation in the case at hand, but rather we have a case in which the joint and mutual will operates on property held in joint tenancy by the testators at the time the will was executed. We think that the contractual provision, together with the other language employed, readily distinguishes the present case from the Watson case. Here the testators specifically stated:

". . . it being our desire to jointly dispose of our property in accordance with an agreement reached between us, we, . . . do hereby make, publish and declare this to be our joint and mutual and irrevocable will and we hereby declare it to be contractual. We each agree and direct that upon the death of the first one of us the survivor shall take a life estate in all the property of the deceased, both real and personal and upon the death of the survivor, all the property, both real and personal, shall descend and be divided among the respective children of each. . . ."

While it is, of course, true that a will speaks as of the date of death of the maker, yet as a general rule and we think here, the intention of the testators is to be arrived at from a consideration of all the facts and surrounding circumstances as of the date of making, and we experience no difficulty in ascertaining the expressed intention of the parties in this case. This is not a case of a joint tenant attempting a severance of the joint tenancy by a testamentary devise to a third party, but rather we think it to be an agreement and contract, testamentary in form, that the survivor should take a life estate in all property however owned by the parties, with remainder over. In *In re Estate of Adkins,* 161 Kan. 239, 167 P. 2d 618, it was held:

"Where a husband and wife made a joint and mutual will wherein each bequeathed to the survivor a life estate in all his property with a provision that the remainder should go to a third person, and one of the testators died and the survivor secured the probate of the will and took under it pursuant to its terms, and the will on its face showed it was made as the result of a contract between the two testators, the property of both passed according to the terms of the joint and mutual will."

We have examined and carefully considered each and every contention advanced by ingenious counsel in the very able and interesting brief of appellant, but in our opinion the lower court was correct in holding that upon the death of Lon his widow, Ethel, became vested of a life estate in the eighty acres in question, with remainder over to the two sets of children named in the will, and the judgment is therefore affirmed.