Maude E. SPICER, Executrix under the Will of Z. N. Spicer, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. W–2332.

United States District Court D. Kansas.

May 2, 1963.

**46**

John E. Royce, Salina, Kan., for plaintiff.

William Miner, Dept. of Justice, Washington, D. C., for defendant.

TEMPLAR, District Judge.

This is an action brought by the executrix of the estate of Z. N. Spicer, deceased, to recover $9,820.15, plus interest, which amount represents additional federal estate taxes assessed against the estate.

On behalf of the estate of Z. N. Spicer, the plaintiff herein filed a federal estate tax return and claimed therein one-half of the gross estate as a marital deduction. Upon examination of the return, the Commissioner of Internal Revenue disallowed the entire value of the estate claimed as a marital deduction on the ground that the joint and reciprocal Will executed by the decedent and the plaintiff herein established a terminal interest in the plaintiff of all of the property listed in the federal estate tax return and thus failed to qualify for the marital deduction under Section 2056(b) (5) of the Internal Revenue Code of 1954. (26 U.S.C.A. § 2056(b) (5))

The parties, by a written stipulation, have resolved many of the pertinent facts. In addition, there is contained in the record a certified copy of the administration proceedings in the Probate Court of Pratt County, Kansas, and the deposition of Maude E. Spicer. The stipulation discloses the following relevant details:

Z. N. Spicer died testate on October 1, 1955, survived by his widow, Maude E. Spicer, and five children. His Will, made and executed on January 21, 1952, was duly admitted to probate and record in the Probate Court of Pratt County, Kansas on November 10, 1955, and Maude E. Spicer was duly appointed and qualified as Executrix of said Will.

The Will of Z. N. Spicer was a joint and reciprocal Will, and provided as follows:

"We, the undersigned, Z. N. Spicer and Maude E. Spicer, husband and wife, of Pratt County, Kansas, both being of sound mind and memory, do hereby make, publish and declare this our Last Joint and Reciprocal Will. Each of us agreeing and covenanting with the other that on the death of either of us, the survivor shall be bound by the terms of this Will, and shall not have the right to make a subsequent Will, revoking this Will or any part thereof, or making a different disposition of the property passing under this Will, whether it be property we now own or shall hereafter become the owners of, from whatever source obtained.

I.

"It is the will of each, that upon the death of either of us, this Will shall be proved and probated, and the just debts and obligations of the deceased are to be fully paid and discharged, and upon the death of the survivor of us, such just debts and obligations of the surviving are to be fully paid from our estates.

II.

"Upon the death of Z. N. Spicer, we specifically devise, and bequeath to our son, Beryl Zane Spicer, all of the construction equipment and machinery, forms and tools, used by The Spicer Construction Company, in its operations, to be his absolutely, for the reason that he has aided and contributed, during our lifetime, to accumulating same.

III.

"Upon the death of either of us, this Will shall be probated as the Will of such deceased person, and on the death of either of us, the rest and residue of our estate, whether real, personal or mixed, shall pass to, and we will and devise the same, to the survivor of us, and such survivor shall have the right to sell and convey the property so devised, and to invest and re-invest the proceeds thereof as the survivor shall deem to the best interest of our estate.

But any such property or investments, in whatever form shall pass to, and we devise and bequeath the same as hereinafter provided.

IV.

"Subject to the foregoing provisions of this Will, we give, devise and bequeath the residue of our estate, whatever it may be, or wherever it may be located, to our five children, namely, Viva Raleigh, Edria Vanderplas, Opal Mae Novotny, Thelma Faye Kumberg and Beryl Zane Spicer, share and share alike.

V.

"We, and each of us, hereby nominate and appoint the survivor of us to be the executor or executrix of this, our Last Will and Testament, and direct that the executor or executrix not be required to give bond.

"In witness of all the foregoing, we have signed this our Last Will, on this 21st day of January, 1952, at Pratt, Kansas."

Said Will was duly executed by both Z. N. Spicer and Maude E. Spicer, and was witnessed and attested as required by law.

The inventory filed in said estate disclosed property of a total appraised value of $127,665.17, including therein jointly owned property in the amount of $55,313.20. On November 30, 1956, a federal estate tax return was filed on behalf of said estate. In said return $1,334.00, representing a life insurance policy with accrued dividends was added to the appraised value of the property as disclosed by the inventory so that the total gross estate as shown on the return was $128,999.17, and the adjusted gross estate was $123,310.45.

Upon examination of said estate tax return by the Internal Revenue Service, an adjustment was made in the value of the Series "E" U. S. Savings Bonds held in joint tenancy. These bonds had been appraised at their face value of $36,100.00 in the inventory, and had been so shown on the estate tax return. The value of these bonds was adjusted to $29,201.00 to reflect their redemption value as of the date of death. Some other minor adjustments were also made so that the adjusted gross estate for the purpose of this litigation is $117,062.85, of which amount $48,414.20 represents the value of property held in joint tenancy at the date of death of Z. N. Spicer, and $1,334.00 represents the value of life insurance and accrued dividends on a policy of life insurance owned by Z. N. Spicer at the date of his death.

No objection is made to the inclusion of any of the property as a part of the gross estate of the decedent for estate tax purposes, nor is any objection made to the adjustments made nor the valuation of the adjusted gross estate as finally determined.

By Item II of his Will, set out above, the Testator bequeathed to his son, Beryl Zane Spicer, all of the construction equipment and machinery, forms and tools used by the Spicer Construction Company in its operations. The value of the the property passing to Beryl Zane Spicer under Item II was appraised at $35,240.00. In the estate tax return, all of the remainder of the property in the amount of $93,759.17 was claimed to have passed to the surviving spouse, and, deducting funeral expenses, debts and expenses of administration and federal estate tax payable out of this property, $87,971.14 allegedly qualified for the marital deduction. Since this amount exceeded one-half of the adjusted gross estate, a marital deduction equal to one-half of said adjusted gross estate was claimed as a marital deduction on Schedule M of said return. Said return, as filed, disclosed a taxable estate in the amount of $1,655.23, upon which a federal estate tax in the amount of $49.66 was paid to the District Director of Internal Revenue.

The Commissioner of Internal Revenue, as stated previously, disallowed the entire value of said estate claimed as a marital deduction on the ground that the interest passing to the surviving spouse did not qualify for the marital deduction

under Section 2056(b) (5) of the Internal Revenue Code of 1954. On the basis of the adjustments made, and the disallowance of the marital deduction, there was proposed against the decedent's estate a deficiency of federal estate tax in the amount of $8,579.55; and that sum, together with interest thereon in the amount of $1,240.60, totaling $9,820.15, was duly paid to the District Director on May 29, 1959.

Thereafter, on or about July 26, 1960, a claim for refund of estate tax was filed, and on August 4, 1960, a supplemental claim for refund was filed.

After more than six months had expired since the date of filing said claims for refund, plaintiff commenced this action for refund of said estate tax. (Subsequent to the filing of this action, and on March 8, 1961, said claim for refund and supplemental claim for refund were disallowed.)

Summarizing, the property involved in this matter is classified generally as follows:

"(a) Construction Company equipment and machinery forms and tools used by the Spicer Construction Company which was specifically bequeathed to Beryl Zane Spicer, son of deceased and his spouse under Item II of the Will and of the value of ............$35,240.00

(b) Property held in joint tenancy:
   (1) Series "E" and "G" U. S. Government Savings Bonds of an adjusted value of ................$29,201.00
   (2) Savings Account, Western Savings Association, of the value of ............................$10,772.23
   (3) Commercial Bank Account in Peoples State Bank, Pratt, Kansas ............................$ 7,840.37
   (4) Real estate of the value of ...................$    600.00
   (The total adjusted value of the property, both real and personal, held in joint tenancy by decedent and his spouse at the date of his death equaled .........$48,414.20.)

(c) Life Insurance with accrued dividends on a policy of life insurance and owned by decedent at the time of death of the value of .........................$ 1,334.00."

---

## QUESTIONS PRESENTED

1. Whether the interest which passed to the surviving spouse under the Last Will and Testament of Z. N. Spicer, deceased, qualifies for the marital deduction.

2. Whether the interest in the life insurance proceeds and jointly owned property which passed to the surviving spouse qualifies for the marital deduction.

## FINDINGS AND CONCLUSIONS

The Government in its brief concedes that the insurance proceeds in the amount of $1000.00 plus accumulated dividends of $334.00, were payable absolutely to Mrs. Spicer upon decedent's death. Therefore, the proceeds of the insurance policy does qualify for the marital deduction and would thus reduce the estate tax proportionately.

With regard to the question as to whether or not the interest which passed to the surviving spouse under the Last Will and Testament of Z. N. Spicer qualifies for marital deduction, there must first be a determination as to the nature of the interest that passed to the surviving spouse under the Will. It is the contention of the government that all of the property, both that held by the testator

individually, and that jointly held, passed from the testator to his spouse by operation of the Will and not by right of survivorship of jointly held property; that is, the execution by the testator and his spouse of the joint and mutual Will effected a severance of all property held in joint tenancy and created a life estate in the surviving spouse.

█ It should be noted here that, as plaintiffs insist, the law of the state creates a legal interest or rights in property and that the federal law specifies what interests or rights should be taxed. (Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154.)

██ In such circumstances certain Kansas statutes are applicable. The joint bank account of the Spicers in the Peoples State Bank of Pratt was subject to the provisions of Kansas G.S. 1949, 9–1205. This statute permits deposits to be made by two or more persons, and authorizes the payment of the deposit to the survivor of the joint depositors. Likewise, the account in Western Savings and Loan Association was deposited under the authority of Kansas G.S.1949, 17–5804, and it cannot be doubted that since the parties have by their stipulation determined that this deposit was in fact a joint account, it was payable to the survivor.

When deposits are made in banks or savings and loan associations in Kansas, and the arrangements are such that two or more persons and the survivor of them may withdraw any or all of the funds, such a transaction constitutes a contract between the depositors and the bank or savings and loan association and by its terms makes the last survivor of the depositors the unqualified owner of the deposit or fund. (Malone v. Sullivan, 136 Kan. 193, 14 P.2d 647, 85 A.L.R. 275.)

It appears from the stipulation filed in the case that the Series "E" and "G" U. S. Savings Bonds, the Savings & Loan Account, the Commercial Bank Account, and the real estate described in Schedule E of the Estate Tax Return, were treated by the Government as jointly owned property of decedent and his spouse at the time of his death.

While the terms and conditions of the certificate of deposit in the Savings & Loan Association; the conditions of the deposit in the Pratt State Bank and the provisions of the deed to the real estate described in Schedule E of the Return are not disclosed by the record, since all the parties agree that these items were jointly held property, it must be assumed that at the time of decedent's death all of the property was held by the owners in joint tenancy subject to all the incidents of joint tenancy, the most important of which is survivorship, by which the entire tenancy, on decease of any joint tenant, remains to the survivors, and at length to the last survivor.

In the early case of Simons v. McLain, 51 Kan. 153, 32 P. 919, the Kansas Supreme Court determined that:

"In the quaint language of the law they [the joint tenants] hold, each *per my et per tout*, the effect of which, technically considered, is that, for purpose of tenure and survivorship, each is the holder of the whole, * * * by which the entire tenancy on the decease of any joint tenant remains to the survivors, and at length to the last survivor." (51 Kan. pages 159, 160, 32 P. at page 920.)

The Kansas Supreme Court in Bouska v. Bouska, 159 Kan. 276, 279, 153 P.2d 923, affirmed the above statement and concludes that the rule is supported by the Kansas decisions.

█ Insofar as the U. S. Savings Bonds, "E" and "G" Series, valued in the amount of $29,201.00 for tax purposes are concerned, it is conceded that Z. N. and Maude Spicer were co-owners. Under Kansas law, it would appear that the rights of a surviving co-owner of these bonds becomes the sole and absolute owner of them upon the death of the co-owner. (Brodrick v. Moore, 10 Cir., 226

F.2d 105, 108.) Treasury regulations so provide:

"If either co-owner dies without the bond having been presented or surrendered for payment or authorized re-issue, the survivor will be recognized as the sole and absolute owner." (31 C.F.R. Sec. 315, 61.)

Savings Bonds are issued pursuant to a contract between the purchasers and the United States. The Treasury Regulations constitute a part of that contract.

The rule followed by a majority of the courts, of which Kansas is one, with respect to the rights in U. S. Savings bonds registered in the names of two individuals in the alternative, upon the death of one of the co-owners, is that the surviving co-owner is vested with the sole ownership in such bonds. (Lemon v. Foulston, 169 Kan. 372, 219 P.2d 388; Anno. 37 A.L.R.2d, 1222, 1223.)

The bonds, under the law of Kansas, thus became the bonds of Maude E. Spicer. Her interest in them is not terminable and their value must be considered in determining the marital deduction allowable in the Estate Tax return of her husband's estate.

The remaining property to be considered in this matter is the real estate, described in Schedule A of the return, of the value of $14,750.00, a mortgage described in Schedule C of the return of the value of $5,616.67, and miscellaneous property described in Schedule F of the return, as adjusted, of the value of $52,069.38. It must be assumed that the property in this category stood in the name of the testator at the time of his death and would pass under the provisions of his Will.

Therefore the judgment of Final Settlement and Distribution of the Probate Court of Pratt County must be given effect in determining the rights and interests in property which have been judicially determined by that court. (Brodrick v. Gore, 224 F.2d 892, 10th Cir.)

The Probate Court determined in its judgment of final settlement, entered on December 28, 1956, unappealed from and thereafter remaining in full force and effect, that the jointly held real property of Maude E. and Z. N. Spicer became the sole and separate property of Maude E. Spicer upon the death of her joint tenant. While no specific reference is made to the jointly held U. S. Government Savings Bonds, Series "E" and "G", or the Savings & Loan account or the Bank Account, which the parties have stipulated were held in joint tenancy by the deceased and his spouse at the date of his death, it is not consistently conceivable that part of the jointly held property passed to the survivor, while another part of it passed under the provisions of the Will. I hold that the interpretation by the Probate Court, determining that the jointly held real property passed to the survivor, applies with equal force to all other property, real or personal, held jointly by Z. N. Spicer and his wife at the time of his death.

The Government apparently concedes that ordinarily jointly held property would pass by operation of law to the surviving joint tenant and not under the Will, but seeks to establish, under what it urges is the applicable Kansas law, that the joint tenancy in the jointly held property belonging to deceased and his spouse were severed by the execution of their joint and reciprocal Will, and as a result, all the property, classified as jointly held, passes under the Will of the deceased and not by operation of law to the survivor.

In support of its position the Government relies on three cases decided by the Kansas Supreme Court. (Lewis v. Lewis, 104 Kan. 269, 178 P. 421; Berry v. Berry's Estate, 168 Kan. 253, 212 P. 2d 283; and In re Estate of Jones, 189 Kan. 34, 366 P.2d 792.) The Lewis case does not support the Government's position. It simply held that a mutual and reciprocal Will is not against public policy and that the interest acquired by the surviving husband who remarried was not subject to statutory or home-

stead rights of his second wife following his death after remarriage, but went to the beneficiaries named in the joint mutual Will *under the terms of the contract* set forth in that instrument. Furthermore, the Will in that case, by its terms, provided for a life estate only in the surviving spouse. The Spicer Will did not so provide.

The Government places much reliance on the Jones case to sustain its view. That case has been carefully analyzed by this Court with full consideration given to the tendency of the Kansas Supreme Court to apply a rule of construction that may at times appear to be productive of a somewhat unorthodox determination of rights in property created by testamentary instruments. The Jones case is an example of this. There, both the testators had children by previous marriages, the husband had two children, the wife one. In that case it was held that a joint will executed by husband and wife providing that at the death of either, all property possessed by the deceased shall be bequeathed to the survivor, *and* at the death of the survivor, all property *thus possessed* shall be divided equally among the three children, created a life estate in the survivor in the jointly owned property of the parties with the remainder in the three children.

The court in that case took particular care to point out "that in construing a will, the court must put itself as nearly as possible in the situation of the testator at the time he made his will and from a consideration of that situation and of all the language used in the entire will, the court must determine the intention the testator had in making such will whereby his property, real, personal or mixed is to be conveyed at his death according to his desires so long as those desires are legal." (189 Kan. 34, 36, 366 P.2d 792, 794.)

The Kansas Court then observes in its opinion, that similar language in the case of Sharpe v. Sharpe, 164 Kan. 484, 190 P.2d 344, created a life estate in the surviving widow with power of disposition during her lifetime. Following this statement is the kernel of the whole matter in the Jones case. The Court, placing itself in the situation of the testator, determined what the testator must have intended by concluding that:

> "The discussion in that case [the Sharpe case] and the authorities cited are quite persuasive but we cannot say they are conclusive herein *for the reason the parties here provided for their children by former marriages*, determining the amount to each and naming them." (Emphasis supplied.)

And thus the Kansas Court by liberally applying an elastic rule of construction, carried out the manifest intention of the testator and required the property to be distributed in such a manner as to give his two children their share of the estate of which, under any other construction, they would have been deprived.

A similar situation existed in the Berry case where the testators, husband and wife, executing a joint Will, each had three children by previous marriages. *The Will, by its terms, gave the survivor only a life estate by specific agreement of the parties*, and the agreement further provided that at the death of the survivor the property should be divided among the respective children of each. No such language is found in the case at bar, and it appears that the five children named in the Will of Z. N. Spicer, were all children born to the marriage of Z. N. and Maude E. Spicer.

Under Kansas law, what estate or interest did the surviving spouse take in the property that passed under the Will of Z. N. Spicer? While the Will is joint and mutual in form, and contains elements of a contract, it is not the Last Will and Testament of Maude Spicer unless and until after her death it is admitted to probate as such. (St. Denis v. Johnson, 143 Kan. 955, 57 P.2d 70.) Unfortunately, there is no Kansas case in which the language of a Will is the same as found here, though some are quite similar.

Using the Kansas rule of construction, the Court must place itself as nearly as

possible in the situation of the testator at the time he made his Will, and from a consideration of the situation and of all the language used in the entire Will, the Court must determine the intention the testator had in making such Will whereby his property is to be conveyed at his death according to his desires so long as the desires are legal.

■■■■■■ If the testator, under such a test, intended to give his wife only a life estate in his property that passed under the terms and provisions of his Will, then that intention must clearly appear, for it is presumed that he intended to pass to her the full title to the property so bequeathed and devised. (G. S. Kansas, 1949, 67–202; Twist v. Twist, 91 Kan. 803, 139 P. 377.) Furthermore, if the wife received but a life estate, then it must be considered whether she had the power to dispose of the property in any manner that suited her and whether this right was "exercisable in all events." If she received a life estate and in addition the right to dispose of any of the property without restriction, then it would under Section 2056(b) (5) qualify for the marital deduction. This Court prefers to give the interpretation it believes the testator, Z. N. Spicer, intended, taking into consideration the surrounding facts and circumstances and the language of the Will itself. Spicer and his wife were married but once, and that one time to each other. They had seven children born to this marriage, five of them survive; the only son, who had been his father's business associate, was given outright the construction business property, which was a substantial part of the estate. This couple had started from scratch, so to speak, with a team and wagon and a few sticks of furniture. With industry, thrift and foresight, by the sweat on their faces, they raised a large family and managed to accumulate something for their old age. Both had worked in the business—Maude had kept the books—together they achieved some degree of business success. Z. N. Spicer, when he made his Will, would have every reason to leave his companion of some

fifty years, his helpmate and the mother of his children the full control and benefit of the property she had helped him accumulate through these years in the event she survived him, with the unrestricted right to sell or otherwise dispose of that property, considering nevertheless, that any property remaining after her death should be divided equally among their five children. This, the Court believes was the natural and obvious purpose and intention of Z. N. Spicer when all factors which the Court has the right to consider are taken into account. It is apparent to this Court that Spicer intended to make adequate provision for his wife, presuming it unlikely that she would make great inroads upon the estate, and believing that his children would receive what she did not expend of it during her lifetime. Such a testamentary arrangement has been determined under Kansas law to create what is commonly known as a life estate with power of disposition. (Markham v. Waterman, 105 Kan. 93, 181 P. 621.)

This is not a case where a man with children married a woman with children and both having property, agree to leave the property in such a way that the survivor should have its use during his lifetime and at the survivor's death, all the properties should be distributed among the children of both as was the circumstance in Berry v. Berry's Estate, 168 Kan. 253, 212 P.2d 283, and In re Estate of Jones, 189 Kan. 34, 366 P.2d 792. This fact alone is sufficient to distinguish the case before us from Berry and Jones, relied upon by the Government. There are further reasons those cases do not support the Government's contention. In Berry the life estate in the survivor was specifically provided for by the contract contained in the provisions of the Will. No such agreement exists here. In Jones the peculiar language of the agreement contained in the Will was reviewed by the Kansas Supreme Court as follows:

" ' * * * at the death of the testators herein named, *all property possessed* by the deceased shall and

is hereby bequeathed to the survivor, absolutely and without reservations, *and* at the death of the survivor, it is the will and wish of both testators herein that *all property thus possessed* shall *then* be divided equally between our three children or their heirs, * * *.' [Emphasis supplied by the Court.]

"Following fundamental rules of English construction, the above use of two independent statements, joined by the co-ordinate conjunction *and* resulted in a compound sentence, and the use of the words *thus possessed* in the second independent statement gave Bessie the power of disposition so long as the interests of Maxine, David, and Wilbur in the remaining property left at Bessie's death were not changed. In other words, the remaining property at Bessie's death would pass to Maxine, David, and Wilbur share and share alike." (189 Kan. 34, 38, 366 P.2d 792, 795)

The court therefore concluded that because of that particular contractual feature of the Will, Bessie was precluded from disposing of the property by another will, otherwise than she had provided in this joint will; and further that by her contract her power of disposal during her lifetime was limited to necessities, to prevent her from thereby breaching her contract.

▇ No such language appears in the Spicer Will. It was the duty and responsibility of the Probate Court administering the Z. N. Spicer estate to name the heirs, devisees and legatees, describe the property and state the proportion or part to which each is entitled (G.S.Kans. 1949, 59–2249), and while the Probate Court might have defined the interests more clearly, this Court believes that the judgment of the Probate Court, which recites:

"That Maude E. Spicer, his widow, is entitled to have and receive all the rent and residue of said estate, whether real, personal or mixed,

subject to the provision that any property or investments, in whatever form *as may remain* at the death of Maude E. Spicer, shall go and pass to * * *" [the five children]. (Emphasis supplied.)

correctly interpreted the Will and under the rule set forth in Sharpe v. Sharpe, 164 Kan. 484, 190 P.2d 344, gave the widow, Maude E. Spicer, a life estate in the property of the deceased that passed under the Will with an unrestricted right and power of disposition during her lifetime, exercisable by her alone and in all events, which qualifies the interest she took for marital deduction under the applicable statute and regulations.

The plaintiff is entitled to recover the estate taxes for which the action was brought.

Plaintiff's counsel will prepare and submit proper Order of Judgment conforming to this opinion.