**UNITED STATES of America,
Appellant,**

v.

**Maude E. SPICER, Executrix of the Will
of Z. N. Spicer, deceased, Appellee.**

**No. 7542.**

United States Court of Appeals
Tenth Circuit.

June 11, 1964.

Harry Marselli, Attorney, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Jonathan S. Cohen, Attorneys, Dept. of Justice, Washington, D. C., Newell A. George, U. S. Atty., and Robert M. Green and Melvin Gradert, Asst. U. S. Attys., on the brief), for appellant.

Tom W. Hampton, of Hampton, Dunham, Royce & Engleman, Salina, Kan. (C. Stanley Nelson and Jack N. Stewart, Salina, Kan., and B. V. Hampton and Bill Murray, Pratt, Kan., on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

This appeal requires the construction of a joint, mutual and contractual will to determine the right to the marital deduction provided for in 26 U.S.C. § 2056 in computing federal estate taxes. The estate tax return claimed the statutory marital deduction on the adjusted gross estate. The Commissioner of Internal Revenue disallowed the entire value of the estate for marital deduction purposes on the grounds that the will severed the joint tenancies under which the parties held real and personal property and by its terms granted to the survivor only a life estate in all of the property owned by the parties, thereby subjecting the entire estate to federal estate tax. A deficiency was assessed, which was paid, and this action was brought to recover the same. The trial court held that the will gave to the survivor a life estate in the property with unrestricted right of disposition during her lifetime, and did not sever the joint tenancies. 217 F.Supp. 44. Judgment was entered in favor of the plaintiff in the amount of the refund claim.

The material parts of the will, which was executed in January, 1952, are:

"We, the undersigned, Z. N. Spicer and Maude E. Spicer, husband and wife, of Pratt County, Kansas, both being of sound mind and memory, do hereby make, publish and declare this our Last Joint and Reciprocal Will. Each of us agreeing and covenanting with the other that on the death of either of us, the survivor shall be bound by the terms of this Will, and shall not have the right to make a subsequent Will, revoking this Will or any part thereof, or making a different disposition of the property passing under this Will, whether it be property we now own or shall hereafter become the owners of, from whatever source obtained.

\*     \*     \*     \*     \*     \*

"III

"Upon the death of either of us, this Will shall be probated as the Will of such deceased person, and on the death of either of us, the rest and residue of our estate, whether real, personal or mixed, shall pass to, and we will and devise the same, to the survivor of us, and such survivor shall have the right to sell and convey the property so devised, and to invest and re-invest the proceeds thereof as the survivor shall deem to the best interest of our estate. But any such property or investments, in whatever form they remain, at the death of the survivor of us, shall pass to, and we devise and bequeath the same as hereinafter provided.

"IV

"Subject to the foregoing provisions of this Will, we give, devise and bequeath the residue of our estate, whatever it may be, or wherever it may be located, to our five children, namely Viva Raleigh, Edria Vanderplas, Opal Mae Novotny, Thelma Faye Kumberg and Beryl Zane Spicer, share and share alike."

During their married life of approximately 50 years, Maude E. Spicer and her husband, Z. N. Spicer, accumulated real and personal property of the value

of about $125,000. Following the death of Z. N. Spicer on October 1, 1955, the joint and mutual will was admitted to probate in the Kansas state court. After some adjustments, the gross estate was fixed at $117,062.85, of which $48,414.20 represented the property held in joint tenancy at the time of Spicer's death. In the estate tax return all the property, except a specific bequest to a son,[1] was claimed to have passed to the surviving spouse. After deducting allowable expenses, the balance was $87,971.-14. Since this amount exceeded one-half of the adjusted gross estate, a marital deduction equal to one-half of the adjusted gross estate was claimed in the tax return. After taking into consideration the marital deduction, the return disclosed a taxable estate of $1,655.23, upon which a tax of $49.66 was paid. The United States contends that the unambiguous terms of the will disclose that the parties thereto intended that all of their property, including the jointly owned property, with the exception of the specific bequest to the son, was to be held by the survivor for life, with only limited powers of management, that is, it was not within the power of the survivor to use or dispose of the property at any time, for any purpose, and in all events, and therefore did not qualify for the marital deduction under Section 2056.[2]

■ To qualify for the marital deduction, an interest going to the spouse must meet the statutory requirement of property passing "from the decedent to his surviving spouse." An ordinary bequest giving to the survivor only the use of the property during life with a gift over to named beneficiaries after the death is a terminable interest and not deductible. However, the statute provides that a life estate in the surviving spouse may qualify for the deduction if the survivor alone has the general power of appointment exercisable over the property without restriction.[3]

1. Paragraph II of the Will provides:
"Upon the death of Z. N. Spicer, we specifically devise, and bequeath to our son, Beryl Zane Spicer, all of the construction equipment and machinery, forms and tools, used by The Spicer Construction Company, in its operations, to be his absolutely, for the reason that he has aided and contributed, during our lifetime, to accumulating same." This property was appraised to be of the value of $35,-240.00.

2. The applicable portion of Section 2056, 26 U.S.C., is as follows:
"(a) Allowance of marital deduction.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.
"(b) Limitation in the case of life estate or other terminable interest.—
* * * (5) Life estate with power of appointment in surviving spouse.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than his surviving spouse—
"(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and (B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.
This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

3. An unlimited power in the survivor to invade the corpus during her lifetime satisfies the unrestricted power of appoint-

The parties agree that the legal interest or the nature of the title to the property received by the survivor is to be determined by law of Kansas. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed 154, modified 317 U.S. 602, 63 S.Ct. 140, 87 L.Ed. 154, reh. denied 317 U.S. 711, 87 L.Ed. 566; United States v. Mappes, 10 Cir., 318 F.2d 508.

In construing wills, the Kansas courts have stated that the intent of the testator is to receive primary consideration and the court "must put itself as nearly as possible in the situation of the testator at the time he made his will and from a consideration of that situation and of all the language used in the entire will, the court must determine the intention the testator had * * *." In Re Jones' Estate, 189 Kan. 34, 366 P.2d 792, 794; Beall v. Hardie, 177 Kan. 353, 279 P.2d 276. In considering joint and mutual wills some of the Kansas decisions have held that the survivor took a life estate with varying degrees of power to dispose of the estate property. For example, In Re Jones' Estate, supra; Berry v. Berry's Estate, 168 Kan. 253, 212 P.2d 283; In Re Weidman's Estate, 181 Kan. 718, 314 P.2d 327; Beall v. Hardie, supra; Zabel v. Stewart, 153 Kan. 272, 109 P.2d 177. In all of these cases the court attempted to give effect to the intent of the parties as reflected by the language of the will and the circumstances existing at the time it was drafted. In Beall v. Hardie, supra, 279 P.2d at 279, it was said:

"In construing the will in its entirety, it becomes clear that the provision last stated is simply that if the real estate therein provided was still owned by the surviving testatrix at her death, the property would pass to the children according to its terms."

To sustain its position, the United States argues that the language of Para-

graph III of the will precludes disposition of any part of the corpus of the estate by any method other than for a valuable consideration, which must be reinvested and remain in the estate. It relies principally upon the Kansas cases of In Re Jones' Estate, supra; and Berry v. Berry's Estate, supra. Those cases construe joint and mutual wills with language somewhat similar to that used by the Spicers in this case, and the Kansas court held in each instance that the parties intended that the survivor should have only a life estate in the property. In the Berry case the will provided that the survivor should take only a life estate in the property, and upon the death of the survivor the property should be distributed to the respective children of each. In the Jones' Estate case the will devised the property to the survivor without reservation, but provided that on the death of the survivor "all property thus possessed shall then be divided equally between our three children * * *." In each of these cases the property was to go to the children by former marriages. There was no power of disposition in either case. The Spicer will provides that on the death of either party, the residue of their estate should pass to the survivor with the power to sell and convey the property and invest and reinvest the proceeds "as the survivor shall deem to the best interest of our estate." Upon the death of the survivor, the property or investments "in whatever form they remain" was to be distributed equally among the five children of the parties.

When Mr. Spicer died in 1955, the estate of him and his wife was the accumulation of joint efforts over a period of more than fifty years. Their five living children were all grown and married. The record indicates that during their lives they had exercised joint control over all the property. Their cash

ment required by statute, notwithstanding the survivor may not have a testamentary power of disposition over the remainder. Rabkin & Johnson, Federal Income, Gift & Estate Taxation, Vol. 2, § 53.05(6) pp. 5349–50; Treas. Regs. §§ 20.2056(b)–5 (g) (1) (i), 20.2056(b)–5(g) (3).

**754**

was kept in joint checking accounts at the bank; the bonds and some real estate were acquired in their names jointly. The interest in the real property owned by Mrs. Spicer had been inherited. It seems quite obvious the real purpose of the will was to give the construction business to the son upon the death of Mr. Spicer, in which case if Mrs. Spicer was the survivor she was to have absolute control over the remaining property, and as in Sharpe v. Sharpe, 164 Kan. 484, 190 P.2d 344, if there was any property left at her death, it was to be divided among the children.[4] To construe the will as the United States would have us do, would create a situation in the survivor completely different from the previous manner of operation. For instance, if Mr. Spicer had been the survivor, under such a construction of the will he would not have been able to use money in the joint accounts or property jointly held, or even his own property to conduct his business. No provision was made for the survivor to use any part of the estate for living expenses. We think the trial court, regardless of whatever reliance it may have placed upon the decree of the Kansas probate court, properly construed the provisions of the will.

■■ Joint tenancies with the right of survivorship may, under Kansas law, be severed by the execution of a joint, mutual and contractual will if it clearly appears that the parties so intend. Berry v. Berry's Estate, supra; Hewitt v. Biege, 183 Kan. 352, 327 P.2d 872; Carson v. Ellis, 186 Kan. 112, 348 P.2d 807. While it is doubtful that the decision on the question of whether the will severed the joint tenancies would affect the estate tax due, we are of the opinion that the court's finding that the parties by their will did not intend to sever the joint tenancies is not clearly erroneous.

Affirmed.

---

4. This was the substance of Mrs. Spicer's testimony.