MARY I. WATERS, APPELLANT, *v.* C. A. HARPER, SEYMOUR J. HARPER, EVOLYN REED TALBOT AND ESTHER DENNISON, RESPONDENTS.

No. 3704

December 4, 1952. 250 P.2d 915.

F. *Grant Sawyer,* of Elko, for Appellant.

*Orville R. Wilson,* of Elko, and *Kenneth L. Mann,* of Elko, for Respondents.

## OPINION

By the Court, MERRILL, J.:

This is a suit brought by respondents as plaintiffs below for the establishment of a constructive trust of certain properties held and claimed by appellant under deed and bill of sale. The suit was tried to the court with an advisory jury which, however, upon completion of the case, was not utilized by the court but was dismissed. The court then made its findings and entered judgment in favor of respondents that the deed and bill of sale under which appellant claimed be cancelled and that appellant execute a quitclaim deed and bill of sale of such property to respondents. From that judgment and from order denying new trial this appeal is taken.

The facts show that in 1943 A. L. Harper and Elizabeth Harper, his wife, possessing an estate consisting entirely of community property, executed a joint and mutual will. It provided that upon the death of either

of them, all property then possessed should go to the survivor "to use the same as such survivor may see fit and become the property of said survivor absolutely." It then provided that any property "which may be owned by the survivor at his or her death" should go to the four children of the parties (the respondents herein). The will then provided: "In order to deprive either of us of the right to revoke this our joint and mutual will, we hereby declare that this will is executed in pursuance of an agreement and a contract between us, and that each promise and agreement of each of us is a consideration for each promise and agreement of each of us to the other; and it is the agreement and contract between each of us that this will is and shall be irrevocable."

Elizabeth Harper died in 1947 and A. L. Harper entered into sole possession and control of the properties of the estate. In July, 1948, appellant was employed by Harper as housekeeper and practical nurse for $25 a week plus room and meals and continued to serve in such capacity until Harper's death. In October, 1950, Harper executed three instruments: a deed to appellant of the house in which he was living; a bill of sale of the household furnishings located in that home; a codicil to the joint will bequeathing to appellant the house and furnishings covered by the deed and bill of sale "in grateful appreciation for the services rendered to me by Mary I. Waters." The deed and bill of sale were duly recorded and the documents delivered to appellant.

On February 21, 1951, Harper died. Respondents were notified by appellant of her contended ownership and this suit was brought. Incompetency of Harper to execute the transfers and undue influence brought to bear upon him were both asserted by respondents. These matters were, however, dismissed from the case by action of the trial court and we proceed upon the assumption that no basis existed for such assertions.

Three principal questions are presented by this appeal. First: whether Harper was precluded by contract from making the transfers to appellant.

It is elementary that parties may bind themselves to leave property in an agreed manner. See: 57 Am.Jur. 468, 469 (Wills, secs. 694, 695). It is clear from the express language of the will that such an agreement had been reached by the parties. What is not clear is whether that agreement precluded alienation of estate property by the survivor during his lifetime. The will contains no express prohibition of alienation.

 
The general rule relative to the right of alienation in such cases is expressed in 57 Am.Jur. 479 (Wills, sec. 710) as follows: "Whether testators who have executed a joint will, or separate wills, containing mutual and reciprocal provisions are restricted from disposing of the property during their respective lifetimes is a question primarily of the construction of the agreement under which the will or wills were executed. It may be stated generally that the courts do not consider that the parties to a joint and mutual will intended to restrict either party from disposing of property in good faith by transfers effective during his or her lifetime, unless a plain intention to this effect is expressed in the will or in the contract pursuant to which it was executed."
We have no quarrel with the rule as so expressed. The essential question in our view is whether the transfer here considered can be characterized as one in good faith. See: Ann. 108 A.L.R. 867. The testator, having contracted against testamentary disposition save in the agreed manner, can hardly be said to have acted in good faith if the purpose of the alienation was to defeat the agreement by transfer in lieu of testamentary disposition; and this, regardless of apparent justification for his desire to depart from the terms of the will. On the other hand, if the true purpose of the alienation was to provide for his needs and comfort during his lifetime, good faith could hardly be denied. The essential determination, we feel, is between these two situations.
That determination has been made by the trial court

which expressly found as fact that the purpose of the alienation was to defeat the agreement and, in contemplation of death and in lieu of testamentary disposition, to provide for appellant during the testator's lifetime. If the record provides support for this finding, we shall not be disposed to disturb it.

Error has been assigned relative to testimony admitted by the court respecting conversations had with the deceased. We need not decide upon this matter since, in our view, the record provides support for the court's finding without resort to such testimony.

Appellant contends that a contract existed between herself and Harper by the terms of which she agreed to care for Harper during his lifetime in exchange for the property following his death. No direct evidence of such an agreement appears in the record (sec. 8966, N.C.L. 1929, prohibits a person from testifying when the other party to the transaction is dead) and the following undisputed facts render unlikely its existence in good faith.

At the time of execution of the transfers Harper was 86 years of age, in poor health, crippled and feeble. The transferred property was of a value in excess of $12,000. Appellant had been caring for Harper for wages of $25 a week plus room and meals. It would appear unlikely that it had become reasonably necessary to make such substantial provision in order to continue to receive her services. There had been disputes and bickerings between Harper and certain of his children. He had revoked, as to one son, the right of access to his safe-deposit vault and expressed suspicion as to the motives of that son's advice on estate matters. He had expressed a desire to exclude a daughter from his will and had obtained legal advice as to his right to do so. The will upon its face showed many erasures indicating dissatisfaction with certain of its provisions. The language of the codicil itself indicated considerations of appreciation rather than a contractual obligation.

All of this would tend strongly to indicate that Harper's true purpose in making the transfers was to effect, what then seemed to him under the circumstances then existing, a more proper and equitable division of his estate among those deserving recognition. This right, regardless of apparent justification for its exercise, no longer remained to him.

We conclude that the record supports the trial court in its finding in this regard; that, upon the first question before us, the transfers to appellant were in breach of the contract between Harper and his wife.

The second question here presented is whether appellant in good faith gave such consideration for the deed and bill of sale as to cut off respondents' equitable rights arising from Harper's breach of contract. The trial court found that appellant had no knowledge of the existence of the contract. It further found, however, that appellant gave no consideration for the transfer.

The record is lacking in direct evidence upon the point of consideration. Appellant relies upon the presumption of consideration and prima-facie proof thereof established by the formal recitals of consideration in the deed and bill of sale. As against such presumption we feel that the trial court is supported in its finding by the language of the codicil executed at substantially the same time as the deed and bill of sale. The codicil recites the execution of the other instruments and states that testamentary provision is made in event those transfers, for any reason, should be held invalid. It is hardly reasonable to suppose that the consideration for the transfers and for the testamentary disposition would not be the same. The consideration recited in the codicil is clearly expressed: "* * * in grateful appreciation for the services rendered to me." For those services appellant had already been compensated. They may not be regarded as consideration passing from her

to Harper. See: Goldsworthy v. Johnson, 45 Nev. 355, 374, 204 P. 505, 511.

Appellant points to evidence that after execution of the deed and bill of sale, and for the period of three or four months until Harper's death, she received no wages. The evidence is not positive upon this point, but in any event this fact standing alone is insufficient to warrant rejection of the finding in question. It does not necessarily follow that appellant was obligated by contract to provide her services without charge. Moreover, the very facts we have mentioned as reflecting upon Harper's intent in making the transfers, would to some extent also place appellant upon notice that any consideration given by her was wholly disproportionate to the value received, and reflect to that extent upon the bona fides of her position in the eyes of equity.

The final question presented is whether, at the time of bringing suit, respondents had any existing interest upon which such suit might be based. At the time suit was commenced the will had not been admitted to probate as Harper's will. Respondents could not, therefore, claim as heirs or potential heirs or representatives of Harper as their rights to take under the will had not been determined. Appellant contends that the court of equity in entertaining this suit has usurped the functions of a probate court; that by finding, through the will itself, an enforceable contract to exist, it has in effect admitted the will to probate and denied probate to the codicil; that any right in respondents to claim under the instrument must await action by the probate court upon the will and codicil.

As we have mentioned earlier in this opinion, it is elementary that parties may bind themselves to leave property in an agreed manner. It is likewise clear that the beneficiaries of such an agreement may enforce it by a suit in equity. See: Ann. 169 A.L.R. 9, 55 et seq. Respondents in this suit are not claiming under the will

as heirs of Harper. They are claiming as beneficiaries of a contract. The will, then, in this suit has no status as a will. It appears simply as evidence of the existence of a contract. Even should the will be denied probate, the contractual rights of respondents would continue to exist. Even had no will been executed, their rights (if such could otherwise be established) would continue.

Appellant asserts the proposition that where the breach of contract consists of revocation of a mutual will, the revoking will or codicil must first be admitted to probate before any action may lie for specific performance or establishment of trust. Allen v. Bromberg, 147 Ala. 317, 41 S. 771. True, this suit might have awaited probate of the will and codicil and distribution of the property to appellant thereunder. Here, however, the breach consisted not only in execution of the codicil. It consisted also in execution of the deed and bill of sale. Appellant now claims title by virtue of those transfers. Equity, then, need not await probate of the codicil in order that an interest arise upon which a trust might be impressed.

Nor may it be said that the procedure here adopted permits the property to escape administration contrary to the intent of the contract that it go by testamentary disposition. By its judgment the trial court provided that possession of the property be delivered to Harper's legal representative for purposes of probate.

True, if probate of the will ultimately were to be denied and the estate were to go by intestacy, rights of others not party to this suit might thereupon arise. Such matters, however, are clearly beyond the issues of this suit and the effectiveness of the decree rendered, which are limited to an establishment of the right to the property involved as between appellant and the beneficiaries of the Harper contract.

Other questions are raised by appellant's assignment of errors relative to rulings upon evidence and to specific findings by the court which, it is contended, are

not supported by the evidence. In our view none of the questions so raised could materially affect the decision of the trial court in the light of our holding upon the questions discussed.

The judgment and order are affirmed with costs.

BADT, C. J., and EATHER, J., concur.