(609 P.2d 177)

No. 50,585

# In the Matter of the Estate of Elizabeth A. Ciochon, Deceased.

Petition for review denied May 19, 1980.

Opinion filed March 21, 1980.

*John W. Brand, Jr.,* of Stevens, Brand, Lungstrum, Golden & Winter, of Lawrence, for appellant, Ralph H. Ciochon.

*Fred S. Jackson,* of Topeka, for appellee, Charles R. Baer.

Before PARKS, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This is an appeal from a district court order construing a will to be joint, mutual and contractual. The court found that the will severed the joint tenancy feature of property that had been owned jointly by appellant, Ralph Ciochon, and his deceased wife, Elizabeth Ciochon, prior to its execution, and that upon the death of Elizabeth Ciochon all property passed to the remaindermen named in the will because Ralph Ciochon failed to timely offer the will for probate pursuant to K.S.A. 59-618, thereby forfeiting any interest which he otherwise would have been entitled to take under the will.

At the time of Elizabeth Ciochon's death, all of the real and personal property owned by her other than her personal effects was held in joint tenancy with her husband, Ralph Ciochon. Although the record is not clear whether Ralph Ciochon owned any real or personal property in his own name, it appears that he did not. Both Ralph and Elizabeth had been previously married. Ralph has an adult son, Carroll R. Ciochon, by his previous marriage. Elizabeth had two children by her previous marriage—the appellee, Charles R. Baer, and his sister, Betty M. Hepp. Carroll R. Ciochon and Betty M. Hepp are not parties to this appeal. The three children are the named remaindermen who take under the will in equal shares, share and share alike.

The assets of the estate consisted of a 1965 Ford pickup (which has since been sold for $500), a 1972 Chevrolet Impala valued at $1,500, a checking account of $1,282.75, a savings account of $11,282.75, and the couple's 80-acre farm home valued at $64,000. The farm was acquired in 1965 for $18,000, with Ralph and Elizabeth each contributing approximately one-half of the purchase price. Elizabeth did not work outside the home at any time during the marriage and, other than an inheritance of some undisclosed amount to Elizabeth and another inheritance to Ralph, the sole source of family income was Ralph's salary and, later, their social security checks.

Approximately $8,000 to $10,000 out of Ralph's salary was invested in farm improvements. The savings account originally was Ralph's money. It had a balance of $5,543.23 at the time the will was drawn. The record reflects that the remainder came from Ralph's salary and, presumably, accrued interest. The checking account was from Ralph's salary and social security checks.

On September 23, 1969, Ralph and Elizabeth contacted a lawyer to have a will drawn, and one was drawn and executed

that same day. None of the attorneys presently involved with this case had anything to do with drawing the will, which provided in pertinent part:

"JOINT AND MUTUAL WILL OF HUSBAND AND WIFE

"Know all men by these presents, that I, Ralph H. Ciochon, and I, Elizabeth A. Ciochon, of Route 1, Tonganoxie, Leavenworth County, Kansas, and each of us and both of us being of sound and disposing mind and memory and not under any restraint and realizing the uncertainty of life and the certainty of death, and wishing to direct how our property should be distributed on our respective deaths, do hereby make, publish and declare this to be our Last Will and Testament and hereby revoking any and all former wills by us or either of us heretofore made.

"1.   It is the will and desire of each of us and both of us that our just debts and funeral expenses be paid as a charge against our respective estates.

"2.   In consideration of us both signing this will, we both agree that the said will shall be binding upon both of us and our estates and not revokable [sic] without consent of both parties hereto, and it is the will and desire of each of us and the mutual will and desire of both of us, that on the death of either of us, the survivor shall be given, devised and bequeathed all of the property owned by us, and upon the death of said survivor, the remainder shall be given, devised and bequeathed to our three children, or their issue, namely: Carroll R. Ciochon of Kansas City, Kansas; Charles R. Baer of Route 7, Topeka, Kansas; and Betty M. Hepp of Topeka, Kansas, in equal shares, share and share alike.

"3.   It is the will and desire of each of us and the mutual will and desire of both of us that the survivor of us be executor or executrix of this, our Last Will and Testament, and direct that the Court admitting this will to probate, grant letters testamentary to said survivor without bond   . . . ."

Elizabeth Ciochon died on September 30, 1976. The record shows that Ralph Ciochon had possession of the original will at the time of her death. Betty M. Hepp had a copy of the will, and a copy of it had been shown to Charles R. Baer at some unspecified time prior to his mother's death, although he denied ever having a copy.

Ralph, without contacting a lawyer or the court, decided it would not be necessary to probate the will until his death and he did not offer it for probate. It was nine and one-half months after Elizabeth's death before Charles R. Baer told Ralph the will should be probated. Ralph immediately offered the will for probate and it was duly admitted without objection on August 26, 1977. Ralph was appointed and qualified as executor. On December 13, 1977, Charles R. Baer filed a petition for construction of the will and to restrain Ralph from certain acts. Highly summarized, the petition alleged that Ralph had knowingly withheld the will from probate and Baer was entitled to take under the will

as an innocent beneficiary; that by his failure to file the will pursuant to K.S.A. 59-618, Ralph forfeited any interest in the estate and owed damages to the remaindermen; that the will destroyed the joint tenancy feature of both real and personal property owned by Ralph and Elizabeth, or either of them, and all property owned by them would pass under the will regardless of whether title was held individually or jointly. Further, the petitioner asked the court to determine that the will was a joint, mutual and contractual one, and to restrain Ralph both as an individual and as the executor from selling or disposing of any property, whether real or personal, owned by him individually or jointly with his deceased wife.

A hearing was conducted and the trial judge held the will to be a joint, mutual and contractual one that had the effect of severing the joint tenancy, and consequently the jointly held property would pass under the terms of the testamentary agreement. He further held that by reason of Ralph's failure to offer the will for probate within the statutory time, he is barred from all rights under the will. The trial judge did not determine Ralph's rights, if any, under K.S.A. 59-403, as no application for allowances was on file. In addition, the trial court held that even if Ralph would take under the will, he would have no power to dispose of the property passing to him under the will of Elizabeth A. Ciochon.

Ralph appeals and raises three arguments:

1. The will did not terminate the joint tenancy.

2. He is not barred by virtue of K.S.A. 59-618 from taking under the will.

3. The will does not prevent him from disposing of any property passing to him by virtue of Elizabeth's will.

Appellant first contends the will is not a joint, mutual and contractual one. The trial court found the will to be joint, mutual and contractual, and our examination of the record causes us to conclude that the trial court did not err in its finding. Whether a will is contractual in nature is a fact question. Our scope of review, however, is not limited to determining whether or not the trial court's finding is supported by the evidence when that determination can be made from the will itself, as we are in as good a position to make that decision as is the trial court. *Reznik v. McKee, Trustee,* 216 Kan. 659, 673, 534 P.2d 243 (1975). If we were so limited, we are of the opinion the record contains substantial competent evidence to support that finding.

The Kansas Supreme Court in *In re Estate of Chronister,* 203 Kan. 366, 372, 454 P.2d 438 (1969), summarized rules to be used in determining whether a will is contractual, as follows:

"(1) Whether a will is contractual, be it a joint will or one of separate wills, is a question of fact which must be established by proof. (2) The mere fact that a will is joint does not in and of itself establish it to be the result of a pre-existing agreement. (3) A joint and mutual will and the terms and provisions thereof, may be considered sufficient as circumstantial evidence to establish that it was executed pursuant to an agreement. (4) Where a joint will shows *on its face* by the terms and provisions thereof that it is contractual in character, extrinsic evidence is not admissible for the purpose of proving otherwise. (5) Where there is ambiguity from the language used in a joint will as to whether or not it is based on a contract, extrinsic evidence is admissible to establish either the existence or nonexistence of a contract." (Emphasis original.)

Without unduly prolonging this opinion with a needless discussion of the rules to be considered in determining whether a will is joint, mutual and contractual, we conclude the will conclusively shows on its face that it is a joint, mutual and contractual will and therefore extrinsic evidence is not admissible to prove otherwise. *Reznik v. McKee, Trustee,* 216 Kan. at 673-74; *In re Estate of Chronister,* 203 Kan. 366; *Beall v. Hardie,* 177 Kan. 353, 279 P.2d 276 (1955); *In re Estate of Adkins,* 161 Kan. 239, 167 P.2d 618 (1946); *Lewis v. Lewis,* 104 Kan. 269, 178 Pac. 421 (1919).

What effect did the execution of the joint, mutual and contractual will have on the joint tenancy property? The trial court, relying on *Berry v. Berry,* 168 Kan. 253, 212 P.2d 283 (1949), concluded that by reason of the execution of the joint, mutual and contractual will, the survivorship feature of the joint tenancy was terminated; thus, the property passed under the testamentary agreement, not under the terms of the various joint tenancies.

Mr. Ciochon argues that *Berry* is a unique case holding that a joint tenancy can be severed by the parties either by clearly manifesting their intent to do so or by disposing of the jointly held property in a manner which is wholly inconsistent with the operation of the joint tenancy. He argues that *Berry* should be narrowly construed and is distinguishable from the factual situation we have before us.

We are cognizant that each case involving the construction of a will must be determined to a great extent from the distinct

language used therein; therefore, other cases construing wills offer little aid in the decision of this case. General rules have been established for our guidance and they will be referred to or cited to in the course of this opinion. In construing a will, the primary consideration is to determine the intent of the testator or, when the will is joint, mutual and contractual, the intent of the testators. To do so, "the court must put itself as nearly as possible in the situation of the testator at the time he made his will and from a consideration of that situation and of all of the language used in the entire will, the court must determine the intention the testator had . . . ." *In re Estate of Jones,* 189 Kan. 34, 36, 366 P.2d 792 (1961).

One joint tenant cannot, without the consent of the other, dispose of his interest in the joint property by will and thereby defeat the right of survivorship. *In re Estate of Laue,* 225 Kan. 177, 185, 589 P.2d 558 (1979). However, a joint tenancy may be terminated by mutual agreement of the joint tenants if it appears from the contract that the parties *clearly* intended to do so. *Carson, Executrix, v. Ellis,* 186 Kan. 112, 348 P.2d 807 (1960); *In re Estate of Biege,* 183 Kan. 352, 327 P.2d 872 (1958); *Berry v. Berry,* 168 Kan. 253; *In re Estate of Means,* 4 Kan. App. 2d 169, 603 P.2d 654 (1979).

Can it be said the will before us expresses an intent by the couple to sever the joint tenancies and convert them to a tenancy in common? Should Mr. Ciochon be estopped from asserting his rights of survivorship in the joint tenancy contract property? We think not. The will expresses no clear intent to sever the joint tenancies, nor does it appear to us that the parties intended that result. The will does not specifically mention the joint tenancy property, and under the facts of this case we are unable to construe the testators' intent to be that the parties intended to sever the survivorship feature of the joint tenancy property. We are fully aware that this joint, mutual and contractual will gives to the survivor "all of the property owned by us." We do not, however, believe the parties expressed a clear intent to sever the joint tenancy features by using such language. Leaving the property in joint tenancy and contracting that the remainder be divided according to the will is not inconsistent with the will provisions. In our opinion, the parties intended the survivor to have the use and benefit of the property, as well as the right to

dispose of it, subject only to the contract between them as to the ultimate disposition of the property remaining at the time of death of the survivor.

In *Berry v. Berry,* 168 Kan. at 258, the parties specifically contracted in the will "that upon the death of the first one of us the survivor shall take a life estate in all the property of the deceased," and that upon the death of the survivor the property would descend to designated persons. The will referred to real and personal property. The Supreme Court determined that it was the intent of the parties to sever the joint tenancy and "that the survivor should take a life estate in all property however owned by the parties, with remainder over."

It has been suggested that *Berry* can be distinguished from the case at bar because *Berry* specifically refers to a life estate. We do not believe that one factor can be used to distinguish *Berry* from the case at bar. The language used in this case effectively gives a life estate to the survivor in any property that passes by virtue of the will, and the fact that the explicit words are not used is of no legal import. We are still of the opinion, however, that *Berry* does not control the case before us. A court must consider the circumstances of the parties in determining their intent (*In re Estate of Jones,* 189 Kan. at 36), and when we consider the intent of the parties in this case, plus the fact a joint tenancy is not to be terminated unless the intent to do so is clearly shown, we believe a valid distinction exists between this case and *Berry.* In *Berry,* the Court determined that it had been the intent of the testators that the property accumulated by them during their marriage should be ultimately disposed of by one-half of it going to her children by a prior marriage and one-half of it to his children by a prior marriage, subject to a life estate in the surviving testator. The distinguishing feature between the cases, as we see it, is the fact that the will in *Berry* did not provide for all of the property owned by the survivor to pass under the joint, mutual and contractual will as it does here—there, it was only the property of the *deceased* that was to be subject to the joint, mutual and contractual will. The Supreme Court in *Berry* specifically noted at page 256 that if the joint tenancy were not terminated then the title to the real estate in question vested in the survivor and was not subject to the contractual provision of the will. Thus, in order to carry out the intent of the testators, it was determined that the testators intended to terminate the joint tenancy.

If the court in *Berry* had determined that the testators did not intend to sever the joint tenancy title, it would have defeated the testators' intent that their respective children by prior marriages share equally in the property accumulated during the marriage and all of the real estate would have passed to the surviving joint tenant's children. In this case, the intent of the parties as expressed in the will can be carried out without terminating the joint tenancy exactly as it could if the joint tenancy were to be destroyed. We will not construe a joint, mutual and contractual will to conclusively show that it was the intent of the testators to sever a joint tenancy when that intent is not clearly set forth and the true intent of the testators can be carried out just as effectively without severing the joint tenancy. All of the property held in joint tenancy here vested in Ralph Ciochon on the death of Elizabeth, subject to the contract.

The trial judge determined that Ralph Ciochon does not possess the power to sell or otherwise convey the property. We disagree. All of the property of the testators appears to have been held in joint tenancy right down to their checking account in which their social security checks were deposited and from which their current bills were paid. Should we adopt the trial judge's construction, the survivor would be unable to use any part of the assets to pay current household and living expenses. The survivor would be limited to interest income from the funds. To us, the will expresses an intent that upon the death of the first of the testators, the survivor is to be able to dispose of any property remaining to provide for necessities, subject to the contract that the assets remaining upon the death of the survivor are devised and bequeathed to their issue as set forth in the joint, mutual and contractual will. We are not unmindful of the significance of the word "remainder." Ordinarily, remainder refers to a future interest. We are convinced, however, that the parties here used the word "remainder" in the same sense as the word "remaining."

In *Sharpe v. Sharpe,* 164 Kan. 484, 190 P.2d 344 (1948), the Court construed "remaining property" as used in the following provision:

" 'I give, devise and bequeath to my wife, Birdie [the plaintiff], all of my property, real, personal, or mixed, wherever the same may be situated and after her death any remaining property of my estate is to be divided equal between my children who are as follows: [naming them]   .   .   .' "

The Court held that the above provision created a life estate in the widow with power of disposition for necessities, stating:

> *"The use of the word 'remaining' by the testator clearly indicates, in our opinion, that the testator intended that the devisee of the real estate should have the power to dispose of such portion of the property as might be required during her lifetime.* Otherwise no practical significance would attach to the use of the words 'remaining property.'" 164 Kan. at 490 (emphasis added).

In *In re Estate of Jones,* 189 Kan. 34, the Court construed the following operative provision of a joint, mutual and contractual will:

> " 'Second, at the death of either of the testators herein named, all property possessed by the deceased shall and is hereby bequeathed to the survivor, absolutely and without reservations, and at the death of the survivor, it is the will and wish of both testators herein that all property thus possessed shall then be divided equally between our three children or their heirs, as follows: Wilbur Sherbondy, David W. Jones, and Maxine E. Johnson."

The Kansas Supreme Court reversed the trial court's determination that the widow took fee simple title to their property upon her husband's death, stating at pages 38-39:

> "Following fundamental rules of English construction, the above use of two independent statements, joined by the co-ordinate conjunction *and* resulted in a compound sentence, and the use of the words *thus possessed* in the second independent statement gave Bessie the power of disposition so long as the interests of Maxine, David, and Wilbur in the remaining property left at Bessie's death were not changed. In other words, the remaining property at Bessie's death would pass to Maxine, David, and Wilbur share and share alike.
>
> . . . .
>
> "Under the terms of the will before us, and the authorities discussed, no question remains but that this will is clear, definite, and unambiguous and we need, therefore, not go into other rules of construction to determine the intention of the testators. (*In re Estate of Hauck,* [170 Kan. 116, 223 P.2d 707]; *Johnston v. Gibson,* 184 Kan. 109, Syl. ¶ 3, 334 P.2d 348.) Bessie received a life estate with power of disposal for necessities and at her death the remaining property is to be divided among the three children of Charles and Bessie share and share alike, under the terms of their joint, mutual, and contractual will."

Here, the trial court relied on *In re Estate of Weidman,* 181 Kan. 718, 719, 314 P.2d 327 (1957), where the Supreme Court held that a will granting a life estate, followed by a remainder to designated heirs, was without power of disposition when the operative provision of the will stated:

> " 'Second: We give, devise and bequeath to our beloved brothers and sisters the balance of our property, real, personal and mixed of what nature where so ever the same may be at the time of our death."

The Supreme Court in *Weidman* stated there was no necessity to state its reason for concluding there was no power of disposition and it did not review the facts it considered in arriving at its conclusion. We thus make no effort to distinguish between *Weidman* and *Jones* on the facts. We find the reasoning in the later case of *Jones* to be the more persuasive. We do note that a legal distinction exists. In *Weidman,* a *life estate* was created and therefore no power of disposition existed unless that power was granted either expressly or by implication. *In re Estate of Lehner,* 219 Kan. 100, 103, 547 P.2d 365 (1976). In the case at bar, *fee simple title* is vested in Ralph by virtue of the death of Elizabeth and, in the absence of a limitation, the power of disposition exists. In view of this opinion, it is obvious nothing will remain in Elizabeth Ciochon's estate after the payment of expenses incurred to date.

Even if we were to determine that Ralph Ciochon is barred from taking under the joint, mutual and contractual will by virtue of K.S.A. 59-618, he is not precluded from taking that to which he is entitled by virtue of K.S.A. 59-403. *In re Estate of Barnett,* 207 Kan. 484, 487, 485 P.2d 1290 (1971). Thus, it is not necessary to determine whether Ralph Ciochon is barred from taking under Elizabeth Ciochon's will. The contractual provisions of that will are, of course, enforceable as a contract by the persons who may enforce the terms of the contract.

In summary, we conclude that execution of the joint, mutual and contractual will did not sever the joint tenancy titles; that Ralph Ciochon, by virtue of his being the surviving joint tenant, took fee simple title to the real property held in joint tenancy and title to the personal property held in joint tenancy. The will, however, is effective as a contract that Ralph Ciochon shall not dispose of any property subject to the terms of the contract, except for necessities, and any assets remaining upon his death are to be devised and bequeathed to the testators' issue as provided in the contract.

Reversed and remanded with directions to enter judgment in accordance with this opinion and to give consideration to closing the estate pursuant to K.S.A. 59-2287.