CATHERINE UCCELLI ADKINS, AND VICTORIA UCCELLI, THROUGH HER GUARDIAN ROBERT LEWIS UCCELLI, APPELLANTS/CROSS-RESPONDENTS, v. OLGA OPPIO, RESPONDENT/CROSS-APPELLANT.

No. 18604

February 22, 1989                    769 P.2d 62

*White Law Chartered,* and *Barbara K. Finley,* Reno, for Appellants/Cross-Respondents.

*Murray Dolan,* Sparks, for Respondent/Cross-Appellant.

# OPINION

By the Court, STEFFEN, J.:

This is an appeal and cross-appeal from a will contest wherein the district court admitted the disputed will to probate despite contentions that a prior will was joint, mutual and contractual and therefore irrevocable. For reasons hereinafter specified, we affirm in part and reverse in part.

Alfredo and Angela Chiesa, husband and wife, had two children, Victoria Chiesa Uccelli and Olga Chiesa Oppio. Victoria in turn had two children, Catherine Uccelli Adkins and Robert Lewis Uccelli. In 1975, Alfredo and Angela executed a will, which provides, in pertinent part:

> *JOINT LAST WILL OF ALFREDO CHIESA AND ANGELA CHIESA KNOW ALL MEN BY THESE PRESENTS:*
>
> That We, ALFREDO CHIESA and ANGELA CHIESA, husband and wife, of Reno, Nevada, both being of sound and disposing mind and memory and not acting under duress, menace, fraud or undue influence, do hereby make, publish and declare this to be our Joint Last Will, hereby revoking any and all Last Wills or Codicils to our Last Will by either of us made, to-wit:
>
> 1.   We hereby declare that we have Two children born as our Issue, to-wit: OLGA OPPIO and VICTORIA UCCELLI:
>
> 2.   We further declare that it is our intention that this Will shall be and remain binding and in effect until and during the Administration of the Estate of the survivor of us;
>
> 3.   We hereby give, devise and bequeath the whole of our Estates of whatever location or description, including Real, personal and Mixed property of which we, or either of us die possessed, or over which we, or either of us have power of Testamentary disposition, EACH UNTO THE OTHER of us who survives, absolutely and in fee simple, meaning hereby that the Survivor of us shall be the absolute owner of all Estate that each or both of us possesses, including our Joint, Community, Separate and after-acquired property;
>
> . . .
>
> 6.   It is our intention that only those persons who are herein specifically named shall share in our Estates, and in the event that any person who is lawfully entitled to do so shall contest this Will, or the Probate thereof, including any named Beneficiary, to such person or persons so contesting we give the sum of $1.00, and no more.

Angela died on May 28, 1983. In 1984, Alfredo moved in with Olga and her family. On April 8, 1986, Alfredo executed a new will which ostensibly revoked the 1975 Will and essentially devised his entire estate to Olga. Alfredo died a month after executing the new will. Four days later, Olga filed a petition to probate the new will. Catherine, and Victoria, through her guardian, responded by offering the 1975 Will for probate. Catherine and Victoria argued that the 1975 Will was joint, mutual and contractual and was therefore irrevocable.

After reviewing the two wills and listening to the parties' arguments, the district court admitted Alfredo's 1986 Will to probate. The lower court determined, as a matter of law, that the 1975 Will was not contractual in nature and was therefore revocable. Critical to the court's determination was the judge's opinion that the 1975 Will did not demonstrate in clear, definite and unequivocal language that the will was binding upon the survivor.

On appeal we are asked to determine whether the trial court erred in failing to find that the Chiesas intended a binding irrevocable joint will. At the outset we note that this court's scope of review is not limited to determining whether the district court's findings and conclusions are supported by the evidence. *See* Matter of Estate of Ciochon, 609 P.2d 177, 181 (Kan.App. 1980). Specifically, "it is the long accepted position of this court that the primary aim in construing the terms of a testamentary document must be to give effect, to the extent consistent with law and policy, to the intentions of the testator." Zirovcic v. Kordic, 101 Nev. 740, 741, 709 P.2d 1022, 1023 (1985) (quoting Concannon v. Winship, 94 Nev. 432, 434, 581 P.2d 11, 13 (1978)). Accordingly, this court is in as good a position to determine intent from a testamentary document as is the trial court. *See Ciochon,* 609 P.2d at 181.

Turning to the merits, a joint will, while testamentary rather than contractual in nature, may by its language evidence an irrevocable agreement between the parties. First National Bank of Nevada v. Friednash, 72 Nev. 237, 241, 302 P.2d 281, 283 (1956). However, any testamentary expression of or reference to an irrevocable agreement must be definite, clear and unequivocal.[1] *Id.* at 240, 302 P.2d at 282. Specifically, because every

---

[1] For example, in Waters v. Harper, 69 Nev. 315, 250 P.2d 915 (1952), this court determined that the following testamentary language evidenced an irrevocable contract:

In order to deprive either of us of the right to revoke this our joint and mutual will, we hereby declare that this will is executed in pursuance of an agreement and a contract between us, and that each promise and

testamentary expression is impliedly subject to a reservation of right to change as circumstances dictate or as affection may from time to time direct, plain intention surrendering this reservation is essential. *See id.* at 242, 302 P.2d at 283.

Applying the foregoing standard to the instant case, we conclude that the 1975 Will evidences a definite, clear and unequivocal intention to establish a binding, irrevocable agreement between Alfredo and Angela Chiesa. First, the Will provides more than a wish or a desire; in the second and sixth clauses we have the plain language "it is our intention." It is difficult to conceive of a better choice of words to express one's resolve or objective. Second, the phrase, "shall be and remain binding," is strong language indicative of an intent to be bound. *See* Ciochon, 609 P.2d at 180-181. The word "shall" is a term of command; it is imperative or mandatory, not permissive or directory. Hence, the obvious conclusion is that the testators intended that the Will be binding and irrevocable during the survivor's lifetime and beyond. Third, the use of the plural pronouns "we," "our" and "us" throughout the Will evidences mutual intention and agreement. *See* Glass v. Battista, 374 N.E.2d 116, 118 (N.Y. 1978). Thus, given the foregoing factors, we conclude that definite, clear and unequivocal testamentary language exists evidencing an intention to make the 1975 Will contractual, binding and irrevocable. It follows then that the trial court erred in admitting Alfredo's 1986 Will to probate.

Moreover, we are unpersuaded by Olga's alternative argument. Specifically, Olga maintains that even assuming the 1975 Will is found to be contractual, binding and irrevocable, Alfredo took all real property by operation of law as a surviving joint tenant. As a result, he became the fee absolute owner not subject to the restrictions of the 1975 Will.

Once again we focus on the testator's intent as derived from the will language. In this case, the 1975 Will states in the third clause, "[w]e hereby give, devise and bequeath the whole of our Estates . . . EACH UNTO THE OTHER of us who survives, absolutely and in fee simple, meaning hereby that the Survivor of us shall be the absolute owner of all Estate that each or both of us possesses, including our Joint, Community, Separate and after-

---

agreement of each of us is a consideration for each promise and agreement of each of us to the other; and it is the agreement and contract between each of us that this will is and shall be irrevocable.

Although this clause was determined to be acceptable evidence of irrevocability, it is by no means the only method of achieving that status.

acquired property.'' The second clause declares that the 1975 ''Will shall be and remain binding and in effect until and during the Administration of the Estate of the survivor of us.'' From these clauses, it is apparent that the testators intended that real property held by the testators as joint tenants would become part of the survivor's estate and that the survivor's estate would be subject to the 1975 Will. Thus, given the 1975 Will language we conclude that all real property originally held in joint tenancy is subject to the 1975 Will. Indeed, Angela went to the grave having abided by the 1975 Will and with the reasonable expectation that Alfredo would do likewise.

Finally, Olga cross-appeals for attorney's fees denied below. However, because there is no evidence that the district court abused its discretion in disallowing the fees, its ruling will not be disturbed on appeal. *See* National Tow and Rd. Serv., Inc. v. Inequity Ins. Co., 102 Nev. 189, 717 P.2d 581 (1986). In addition, we perceive no reason to disturb the conclusion reached below that the balance of a joint savings account passed to Olga upon Alfredo's death.

In light of the foregoing analysis, we reverse the district court's decision to admit the 1986 Will to probate and instruct the lower court to admit the 1975 Joint Will in its place. Further, we affirm the court's denial of attorney's fees and the order determining that the savings account passed to Olga upon Alfredo's death.[2]

YOUNG, C. J., and MOWBRAY, J., concur.

SPRINGER, J., dissenting:

In my opinion, this court should affirm the judgment of the trial court. I dissent for two reasons: first, because I can find no valid contract within the 1975 will which renders the otherwise revocable will irrevocable, and second, because by the very terms of the will the property was transferred to the survivor in fee simple absolute, thereby giving the unconditional title to the survivor, who may dispose of the property without restriction.

To make the will irrevocable there must be a contract between the testators making it so. There is certainly no contract here. All the parties did was to ''declare that it [was their] intention'' that the will should remain in effect until such time as the survivor's estate was administered. This declaration of intention, however clear and unambiguous it might be, does not rise to the dignity of being a contract between the parties. The mere expression of intention or wish that a certain consequence come about does not

---

[2]THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.

destroy the essentially ambulatory character of a testamentary document. As this court has previously stated:

> Essential to every will is its revocable quality. Implicit in every testamentary expression is a reservation of right to change as circumstances involving status or responsibility may alter or as affection may from time to time direct. That the common testamentary *wish* of two people is jointly expressed does not in reason or common sense destroy its ambulatory character in this regard.

First National Bank of Nevada v. Friednash, 72 Nev. 237, 242, 302 P.2d 281, 283 (1966) (emphasis added). As I understand *Friednash,* it stands for the proposition that, without a valid, binding contract to the contrary, a will must be treated as freely revocable. Because I find no language in the will or elsewhere which expresses the Chiesas's promise to be forever bound by the provisions of the 1975 will, I consider the will to be revocable.

Secondly, the survivor's eventual taking of the property, as stated in the will, "absolutely and in fee simple, meaning hereby that the Survivor of us shall be the absolute owner of all Estate that each or both of us possesses," is completely inconsistent with there being any restriction on the survivor's use or disposition of the property. Because "an absolute grant is inimical to the divestiture of testamentary power [of the grantee]," Matter of Zeh, 24 A.D.2d 983, 265 N.Y.S.2d 257, *aff'd,* 18 N.Y.2d 900, 276 N.Y.S.2d 635, 223 N.E.2d 43 (1966), the language in the will is contradictory to appellants' assertion, and the majority's holding, that the will binds the survivor to dispose of his or her estate in fee simple in a particular manner.