THOMAS P. WALLERI, DANIEL WALLERI, MICHAEL J. WALLERI, NICHOLAS T. WALLERI, Appellants, *v.* JOHN T. GORMAN, In His Capacity as Executor of the Estate of DOROTHY B. WALLERI, Deceased, Respondent.

No. 22833

May 27, 1993                                          853 P.2d 714

*Compton & Kemp,* Las Vegas; *Michael John Walleri,* Fairbanks, Alaska, for Appellants.

*John T. Gorman,* Las Vegas, for Respondent.

---

[3]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.

## OPINION

*Per Curiam:*

The district court declined to set aside the second will of a testator who had formerly executed reciprocal wills with her husband and who, subsequent to her husband's death, revoked her reciprocal will and executed a new will. Because the terms of the reciprocal wills did not make them irrevocable, and because there was no evidence of an agreement between the testators not to revoke the reciprocal wills, we affirm.

### Facts

Appellants Thomas, Daniel, Michael, and Nicholas Walleri (the Walleris) brought suit to contest the will of their step mother, Dorothy Walleri (Dorothy). The Walleris' father, Nick Walleri (Nick), died in 1987, leaving all of his property to his wife, Dorothy. At the time of Nick's death, he and Dorothy had similar reciprocal wills leaving their estates first to each other absolutely and then to their six collective children from other marriages, in equal shares. Neither will stated that it was irrevocable, or that it was made in exchange for valuable consideration.

After Nick's death, Dorothy revoked her prior will and executed a second will changing the disposition of her estate to substantially exclude Nick's sons. Nick's sons challenged the probating of Dorothy's second will, arguing that Nick and Dorothy had an agreement that their original reciprocal wills would be irrevocable. The district court found there was no agreement or promise, in the reciprocal wills or otherwise, preventing either Nick or Dorothy from changing or revoking the reciprocal wills, and it entered judgment in favor of Dorothy's estate. The Walleris challenge the district court's conclusion.

### Discussion

A will may "by its language evidence an irrevocable agreement between the parties" involved in making the will, but "any testamentary expression of or reference to an irrevocable agreement must be definite, clear and unequivocal." Adkins v. Oppio, 105 Nev. 34, 36, 769 P.2d 62, 64 (1989). In First Natl. Bank v. Friednash, 72 Nev. 237, 302 P.2d 281 (1956), we were asked to interpret the joint will of a married couple. We held that even

though the evidence showed a common testamentary wish between the parties at the time of the will's execution, no evidence revealed an intent to make the will irrevocable with respect to either party. *Id.* at 242, 302 P.2d at 283. The existence of reciprocal wills is not sufficient by itself to imply an agreement between the testators that the wills were to be irrevocable. "In the absence from the instrument of any expression of or reference to an agreement not to revoke, no promise to such effect, can be implied solely by reason of the reciprocal nature of the testamentary provisions." *Id.*

This rule comports with the state of the law throughout the country:

> The general rule is that . . . either testator under separate wills with reciprocal bequests can revoke his or her will at pleasure in the absence of fraud on the part of the testator who seeks to revoke in inducing the execution of the will by the other testator, or of a contract against revocation. In the absence of a definite agreement between testators who have made reciprocal wills not to revoke the wills, or of circumstances giving rise to a trust, either testator has a right to revoke, even after the death of the other testator. . . . Thus, in the absence of proof that reciprocal provisions contained in the separate wills of a husband and wife were inserted in pursuance of an agreement, such wills are held to be revocable.

79 Am.Jur.2d *Wills* § 762, at 825 (1975). *See* Note, *Contracts Not to Revoke Joint or Mutual Wills,* 15 Wm. & Mary L. Rev. 144, 146-47 (1973). "In the absence of a valid contract, . . . the mere concurrent execution of the will, with full knowledge of its contents by both testators, is not enough to establish a legal obligation to forbear revocation." G. Thompson, The Law of Wills § 153, at 239 (3d ed. 1947 & Supp. 1962). Furthermore, the reciprocal form of the wills is not sufficient in itself to establish a contract between the testators not to revoke the wills. *Id.* at § 34, at Supp. 33, § 153, at 238; 1 W. Bowe & D. Parker, Page on the Law of Wills § 10.4, at 444-46, § 10.48, at 544, § 11.1, at 554 (rev. 1960 & Supp. 1992). The Uniform Probate Code, section 2-701, states, "The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills." 1 Uniform Probate Code Practice Manual 129 (R. Wellman ed.) (2d ed. 1977).

In California, "separate wills of two or more persons which are reciprocal in their provisions" do not accomplish "an irrevocable disposition of property. In the absence of a binding contract, . . . such a will may be revoked in the usual manner by any of the testators." 12 Witkin, Summary of California Law § 168,

at 200-01 (9th ed. 1990). *See* Daniels v. Bridges, 267 P.2d 343, 346 (Cal.Ct.App. 1954). Authority from other jurisdictions is in accord. *See* Rieck v. Rieck, 724 P.2d 674, 676 (Colo.Ct.App. 1986); Proctor v. Handke, 452 N.E.2d 742, 746 (Ill.App.Ct. 1983); In Matter of Estate of Stratmann, 806 P.2d 459, 464 (Kan. 1991); Foulds v. First Nat. Bank, 707 P.2d 1171, 1173 (N.M. 1988); Quandee v. Skene, 321 N.W.2d 91, 96-97 (N.D. 1982); Parker v. Richards, 602 P.2d 1154, 1156 (Or.Ct.App. 1979).

In the instant case, there is no suggestion in the language of the reciprocal wills that the wills were intended to be irrevocable or that the wills were entered into because of an underlying extraneous agreement. This distinguishes the instant case from Adkins v. Oppio, 105 Nev. 34, 769 P.2d 62 (1989), in which the will contained a provision stating, "We further declare that it is our intention that this Will shall be and remain binding and in effect until and during the Administration of the Estate of the survivor of us." *Id.* at 35, 769 P.2d at 63. Absent an express declaration within the wills that the wills were to be irrevocable, or absent some documentary evidence, within or without the wills, suggesting an agreement to make the wills irrevocable, we must rely on the evidence presented at trial to determine the existence of a parol agreement not to revoke the wills.

Although parol agreements affecting a testamentary disposition are not actionable at law, such agreements, if proven, can be the basis for relief in equity. *See* Zunino v. Paramore, 83 Nev. 506, 508-09, 435 P.2d 196, 197 (1967) (nontestamentary oral contract for land enforceable in equity). At trial, the Walleris offered the testimony of three witnesses to prove the existence of a parol agreement that the reciprocal wills were to be irrevocable. Daniel Walleri (Daniel) testified that prior to Nick's death, Nick had told him that Nick and Dorothy had agreed that the survivor of the two of them would inherit the other's entire estate, and that after the survivor's death, the remainder of the estate would be divided equally among the six children. The district court could have properly concluded, however, that Nick was merely recounting the terms of the reciprocal wills, and Daniel did not testify that Nick had told him that Nick and Dorothy had agreed not to revoke their wills. Furthermore, Daniel testified that he understood this agreement to be contained in Nick and Dorothy's wills. We have examined the wills and we find no suggestion in them that the wills were to be irrevocable, and Daniel's testimony does not suggest an agreement outside the wills not to revoke the wills.

Dorothy's sister, Jerry Bissonnette (Bissonnette), testified that shortly after Nick's funeral, Dorothy had told her about the wills

that Dorothy and Nick had made together and about their provisions for dividing the estate among the six children. Bissonnette also testified that Dorothy had told her that Dorothy had executed a subsequent will. Bissonnette did not testify as to any agreement outside the wills not to revoke the wills.

Respondent John T. Gorman (Gorman), who drafted Dorothy's second will and who was the executor of Dorothy's estate, testified that Dorothy revoked her first will by physically destroying it. He also testified that he had no knowledge of any oral agreement prohibiting Dorothy from revoking her previous will.

The testimony of Daniel, Bissonnette, and Gorman was all the evidence the Walleris presented to prove the existence of a parol agreement between Nick and Dorothy that the wills would be irrevocable. However, none of this testimony supports a finding that Nick and Dorothy had an agreement outside the wills not to revoke the wills. We conclude that the evidence supports the district court's finding that Dorothy and Nick had no agreement to make their reciprocal wills irrevocable. Absent such an agreement, Dorothy was free to revoke her will subsequent to Nick's death.

We recognize that the result in this case may seem inequitable. Nick went to his grave believing that his estate would eventually flow to all of his offspring and to Dorothy's offspring in equal shares, pursuant to the terms of the reciprocal wills. However, Nevada precedent, which comports with the law in the vast majority of other jurisdictions, requires an expression of irrevocability within a will or an agreement outside the will to forbear revocation before a will becomes irrevocable. In the instant case, the terms of the reciprocal wills did not make them irrevocable and the Walleris failed to prove the existence of an agreement outside the wills not to revoke the wills. While it may seem unjust to allow Dorothy to revoke her reciprocal will after Nick's death, this result could have easily been avoided if the attorney drafting the reciprocal wills had included irrevocability clauses. We therefore decline to overrule Nevada precedent and adopt a rule of law at odds with the great majority of other jurisdictions simply to achieve a result that may be achieved by the utilization of sound will-drafting techniques.

We have carefully considered the Walleris' other contentions of error, and we find them to be without merit. Accordingly, we affirm the decision of the district court.[1]

---

[1] THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this appeal.